W. L. MOODY COTTON COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105921. Promulgated June 30, 1943.

*H. E. Kleinecke, Jr., Esq.,* for the petitioner.
*E. G. Sievers, Esq.,* for the respondent.

350

**OPINION.**

BLACK, *Judge:* The issues are whether for the taxable year ended August 31, 1937. the respondent erred (1) in disallowing alleged bad debts totaling $77.088.28; (2) in disallowing an alleged bad debt in the amount of $34,832.39; (3) in determining that petitioner realized a gain from the sale of cotton in the amount of $21,913.52; and (4) in refusing to exclude from the income reported by petitioner $32.334.72 representing recoveries during the taxable year on debts which had been deducted by petitioner in prior years as bad debts without receiving any tax benefit therefrom. We shall consider these issues in the order stated.

*Issue 1.*—In the statement attached to the deficiency notice the respondent explained his disallowance of $77.088.28 of the $402,628.05 deducted by petitioner as bad debts during the taxable year in question as follows:

The other amounts disallowed represent the interest included in the amounts claimed as bad debts. As it is held you have kept your books and made your returns on the basis of cash receipts and disbursements, the amounts of interest included in the debts claimed as deductions cannot be made the basis for bad debt deductions in the taxable year.

Section 23 of the Revenue Act of 1936 provides that in computing net income there shall be allowed as deductions. "(k) BAD DEBTS.— Debts ascertained to be worthless and charged off within the taxable year * * *." This statute prescribes three essential requirements which must be met before a taxpayer is entitled to a deduction of any amount as a bad debt: (1) There must be a debt existing in fact;

(2) it must be ascertained to be worthless within the taxable year; and (3) it must be charged off within the taxable year, *Charles A. Collin*, 1 B. T. A. 305. 307; *Motter* v. *Wallace*, 72 Fed. (2d) 678, 680. Petitioner contends that it has met all three of these requirements. We agree with petitioner that it has met the first two requirements, but, because it reports on the cash receipts and disbursements basis, we think it fails to meet the third, *Charles A. Collin, supra.* In the *Collin* case we said:

* * * The statute prescribes that in order for a debt to be deducted from income as worthless it must be *charged off* within the taxable year. The query then resolves itself to the simple one of whether an item may be *charged off* which has never been *charged on.* A taxpayer is at liberty to keep his accounts in any way he chooses so long as his income is clearly and truly reflected thereby. If he chooses to account on an accrual basis, then it is his duty to account for all income accruing to him during the taxable year, and he may deduct all expenses incurred within such year whether paid or not. If at a later time an item theretofore accrued as income proves to be worthless, it is his privilege under the statute here being considered to deduct such item from income. In such case there can be no room for question because that which was *charged off* had been *charged on.*

But is the situation any different in the case of a taxpayer who accounts on a cash receipts and disbursements basis? The statute makes no distinction between such a case and that of accrual accountancy. The rule requiring that the debt be charged off within the taxable year is equally applicable to both. The connotation is irresistible that in using the words "charged off" Congress referred to that which had been *charged on.*

It is true that the taxpayer in the *Collin* case had not at any time previously treated the accrued interest there involved as income or reported it as taxable income, whereas in the instant case the accrued interest of $77,088.28 had been reported as gross income in petitioner's income tax returns for the years 1927 to 1935, inclusive. But such accrued interest was incorrectly reported by petitioner in its returns for the years 1927 to 1935, inclusive, because at all times since its incorporation in 1916 petitioner has kept its books predominantly upon the cash receipts and disbursements basis, and under that method only interest actually received or constructively received is required under the statute to be reported as income. Secs. 41 and 42, Revenue Act of 1936;[1] *Mt. Vernon Trust Co.* v. *Commissioner*, 75 Fed. (2d)

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year. as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed. or if the method employed does not clearly reflect the income. the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer. unless. under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *

938; certiorari denied, 296 U. S. 587; *Penn* v. *Robertson*, 115 Fed. (2d) 167, 173; *Hygienic Products Co.* v. *Commissioner*, 111 Fed. (2d) 330; certiorari denied, 311 U. S. 665. In the latter case the Sixth Circuit said:

Petitioner characterizes its system of accounting as "hybrid." No such system, however, is recognized by the Act; unless the system conforms to one method, it does not reflect income in accordance with the Act, and the Commissioner is empowered to make such corrections as are necessary to make the return accurately reflect income. [S. Ct. citations.]

But notwithstanding the fact that petitioner improperly accrued as income during the years 1927 to 1937, inclusive, $77,088.28 uncollected interest due on debts owing to petitioner which were collateralized with stored cotton, petitioner nevertheless contends that, because the $77,088.28 was thus taken into its gross income as reported on its income tax returns, it was entitled to take the $77,088.28 as a bad debt deduction in 1938 because in that year it ascertained the debts to be worthless and charged them off. Concerning the worthlessness of the debts there is no issue. Likewise there is no issue concerning the sufficiency of the "charge-off" if this Court should determine that such interest was ever "charged on" within the meaning of the applicable regulations and decided cases.

Petitioner urges as supporting its contention the following language at the end of article 23 (k)–3 of Regulations 94: "Accrued interest may be included as part of the deduction only if it has previously been returned as income." Article 23 (k)–3 has to do with uncollectible deficiencies upon the sale of mortgaged or pledged property. We do not think it is applicable to issue 1 in this proceeding. We think the applicable regulation is article 23 (k)–2, which reads in part as follows:

ART. 23 (k)–2. *Examples of bad debts.*—Worthless debts arising from unpaid wages, salaries, rents, and similar items of taxable income will not be allowed as a deduction unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is sought to be made or for a previous year. * * *

The gist of the Commissioner's contention is that such items of income mentioned in the foregoing regulations must have been properly included in the taxpayer's return of income in the prior years and that petitioner, having been predominantly on the cash basis all along, erroneously included in its income tax returns for these prior years the interest in question, and hence such interest was never properly "charged on."

Petitioner contends that since it actually included in its income tax returns for prior years said amounts of accrued interest, although improperly, such amounts were "charged on" within the meaning of

the law and the Commissioner's regulations. On this point the petitioner says in its brief:

As petitioner understands it, the Commissioner has disallowed the deduction of interest accrued in prior years because it was incorrectly "charged on" petitioner's books of account and incorrectly reported by petitioner as gross income in prior years. In this the Commissioner thereby attempts to add to the law and the numerous court decisions, construing the law over the past seventeen years, a further requisite to be reckoned with in considering a bad debt deduction, to-wit: that the debt must have been "properly" charged on the taxpayer's books of account and "properly" included by the taxpayer as gross income in a prior year. This the Commissioner cannot do.

We do not agree with petitioner in the above contention. We cannot agree that a taxpayer on the cash basis can improperly include in its income tax return items of accrued interest which it has not collected and then in a later year make the claim that the items have been "charged on" within the meaning of the applicable law and regulations. Where the regulations which we think are applicable to this proceeding (quoted *supra*) say that certain items shall not be allowed as bad debt deductions "unless the income such items represent has been included in the return of income," we think they mean *properly* included.

In the return for the taxable year before us the respondent, under adjustment (a) referred to in our opening statement, made the corrections necessary to make the return accurately reflect income on the cash basis, and petitioner concedes that the corrections were proper. The details of adjustment (a) are shown in the statement attached to the deficiency notice as follows:

Interest collected, excluded from income returned_____ $5, 359. 08
Less: Interest reported, not collected_____ 2, 318. 43

Interest income added by respondent_____ 3, 040. 65

Although petitioner reported the accrued interest of $77,088.28 in its returns for the years 1927 to 1935, inclusive, it sustained losses in five of those years, and the elimination of the accrued interest reported in those five years would only have the effect of increasing the losses. The record does not show whether the respondent eliminated the accrued interest reported in 1927, 1929, and 1933, years in which petitioner had taxable income, as he did the above item of $2,318.43 in the taxable year. But, assuming that he did not do so, we do not think petitioner's position is improved. The fact remains that petitioner has always kept its books and reported its income predominantly upon the cash receipts and disbursements basis. Upon that basis it should not have reported any of the accrued interest of $77,-088.28 as income. Petitioner was in error in *charging on* its books any of the accrued interest in question.

Since no part of the $77,088.28 in question should have been charged on, we hold that petitioner has failed to meet the third essential requirement necessary for the allowance of a bad debt deduction, namely, that the debt be "charged off" within the taxable year. *Charles A. Collin, supra.*

*Issues 2 and 3.*—In its return for the taxable year in question petitioner deducted $34,832.39 as a bad debt on account of the advances it had made to the Miller partnership, which advances were secured by 3,996 bales of cotton. It arrived at this amount as follows:

| | | |
|---|---|---|
| Indebtedness of partnership which is in controversy | | $244, 393. 46 |
| Less proceeds from sales of security: | | |
| 2,660 bales sold in 1936 for | $138, 935. 63 | |
| 1,336 bales sold in 1937 for | 70, 625. 44 | 209, 561. 07 |
| Balance of indebtedness charged off in 1937 | | 34, 832. 39 |

The respondent disallowed the deduction of $34,832.39 claimed by petitioner and determined that instead of a deduction for a bad debt in the taxable year 1937 petitioner realized a taxable gain of $21,913.52 from the sale of the 1,336 bales of cotton in that year.

It is the respondent's contention that petitioner purchased the 3,996 bales of cotton from the trustee in bankruptcy of the Miller partnership in 1932 at a cost of $145,698.98; that the difference between the partnership indebtedness of $244,393.46 and the purchase price of $145,698.98 represented a bad debt which petitioner should have ascertained to be worthless and should have charged off in either 1932 or not later than May 1933, when petitioner was notified that it would receive no dividend from the bankrupt estate; that $48,711.92 of the cost of $145,698.98 should be allocated to the 1,336 bales of cotton sold in 1937; and that the difference between the selling price of the 1,336 bales and the cost basis thereof represents taxable gain to petitioner. The parties agree that, if it is finally determined that petitioner is taxable on any gain in the taxable year in question, such gain was the amount of $21,913.52 as determined by the respondent.

Petitioner contends that it did not buy the cotton from the trustee in bankruptcy; that under Texas law as a cotton factor it was unlawful for it to buy cotton; that it continued to hold the cotton as security for its debt until it was sold; that the transaction between it and the trustee in bankruptcy was nothing more than an agreement as to the valuation of the cotton pursuant to section 57 (h) of the Bankruptcy Act of 1898, as amended, in order to enable petitioner to participate as an unsecured creditor; that its exact loss could not be determined until the cotton was sold; that, while petitioner *may* have been permitted to take a *partial* bad debt deduction of $98,694.48 in 1932 or 1933, it did not elect to do so; that under the authority of *Moock Electric Supply*

*Co.*, 41 B. T. A. 1209, and cases there cited, it is entitled to a bad debt deduction of $34,832.39 in the taxable year in question, when its bad debt loss became final and complete; and that if it is correct in the foregoing contentions, it would naturally follow that petitioner realized no gain on the sale of the 1,336 bales of cotton during the taxable year.

If petitioner is correct in its contention that it did not acquire title to the cotton by purchase from the trustee in 1932 but remained a mere lien holder in possession until it sold the 1,336 bales of cotton in question in 1937, then it would not be taxable on any profit from the sale and would on the contrary be entitled to the bad debt deduction of $34,832.39 which it claims. But we do not think petitioner is correct in this contention. We think the facts show that it acquired title to the 3,996 bales of cotton from the trustee in bankruptcy in 1932 at a cost of $145,698.98. In support of its contention that it did not acquire the cotton in 1932 petitioner contends that under the laws of the State of Texas it could not, as a cotton factor, have lawfully purchased the cotton. Petitioner cites article 1277 of the Revised Civil Statutes of Texas of 1925, which provides, under the penalty prescribed, that:

No factor or commission merchant to whom any cotton  *  *  *  is consigned for sale on commission or otherwise, shall purchase the same or reserve any interest whatever therein upon the sale of same, either directly or indirectly, in his own name or in the name or through the instrumentality of another, for his own benefit or for the benefit of another, or as a factor or agent of any other person, without express written license from the owner or consignor of such cotton  *  *  *

Up to the date of bankruptcy, R. D. and J. C. Miller were the owners of the cotton in question subject of course to petitioner's valid lien. In order for the petitioner to have been the purchaser of the cotton prior to bankruptcy, under the above quoted statute, it would have had to secure the written consent of R. D. and J. C. Miller.

But when the Millers went into bankruptcy, their title to the cotton passed to the trustee in bankruptcy by operation of law. Section 110, chapter 7, Title II, of the United States Code reads in part:

(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except insofar as it is to property which is exempt, to all  *  *  *

It seems clear that the foregoing provision would cover the 3,996 bales of cotton, subject of course to petitioner's valid lien. The trustee in bankruptcy fully recognized petitioner's lien and, with the approval of the referee in bankruptcy, sold and conveyed to petitioner all the right, title, and interest of the bankrupts to the cotton for a total con-

sideration of $145,698.98, to be paid by crediting that amount on the total indebtedness which the bankrupts owed to petitioner. It was so credited.

After this sale of the 3,996 bales of cotton to it, petitioner was no longer a mere lien holder. It was the owner of the cotton. No one else had any claim or title to it. Its cost basis was $145,698.98 for the 3,996 bales of cotton. After this $145,698.98 was credited on the principal indebtedness of the bankrupts to petitioner, $98,694.48 remained unpaid on this indebtedness. Petitioner was not required to immediately ascertain this indebtedness to be worthless and charge it off in 1932. The $98,694.48 was allowed by the trustee as an unsecured claim against the bankrupts and apparently there was some possibility in 1932 that some dividend might be paid from the bankrupts' estate to unsecured creditors. However, in 1933 petitioner was notified that all the assets of the bankrupts had been sold, that the estate was closed, and that there would be no dividends to petitioner on its unsecured claim. Clearly, there was no further hope that petitioner could or would realize anything further on this $98,694.48 unsecured indebtedness, and in 1933 it should have ascertained that such indebtedness was entirely worthless and should have charged it off in that year, taking deduction therefor on its income tax return. It was not permissible for petitioner to close its eyes to the obvious and continue to carry this debt on its books until 1937 and charge it off in that year, when the remainder of the cotton was sold.

At the beginning of the taxable year petitioner still owned 1,336 bales of the cotton taken over from the trustee in 1932. This cotton had a cost basis of $48,711.92. During the taxable year petitioner sold the 1,336 bales of cotton for $70,625.44. It follows that instead of there being a bad debt deduction of $34,832.39 for the taxable year 1937, petitioner realized a taxable gain of $21,913.52.

This proceeding is to be distinguished from *Moock Electric Supply Co., supra; Commercial Bank of Dawson*, 46 B. T. A. 526; and *Reed v. Commissioner*, 129 Fed. (2d) 908, holding that if a debt becomes partially worthless in a given year, the holder thereof has the option of taking a deduction for a partial bad debt in such year or waiting until some future event definitely fixes the amount of the loss. In the instant case, as we have already endeavored to point out, when petitioner purchased the 3,996 bales of cotton from the trustee of the bankrupt in 1932 in consideration of a credit of $145,698.98 on the indebtedness of the bankrupts, there remained an unsecured indebtedness of the bankrupt estate to petitioner (not against the bankrupts personally, for they had been discharged). This unsecured indebtedness, which represented the entire balance of the original debt, became worth-

less in 1933 when petitioner received information from the trustee in bankruptcy that no dividends would be paid on unsecured debts. As we see it, no question of a partial charge-off is involved. Petitioner should have then charged off the remainder of this indebtedness in its entirety and closed the account. The fact that petitioner did not close the account on its books and continued to carry it until the balance of the cotton was sold in 1937 does not, we think, change the law governing the case. Book entries are evidentiary but not conclusive. The actual facts must control. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. We sustain respondent as to issues (2) and (3).

In support of its contention that it did not become the owner of the cotton in 1932 when by agreement with the trustee in bankruptcy it purchased the cotton at 7 cents a pound, petitioner strongly relies on the case of *Waters* v. *Ellington & Co.*, 289 S. W. 417, a Texas case. We think that case is clearly distinguishable from the instant case on its facts. It was not a case, as here, where the trustee in bankruptcy sold the mortgaged property to the lien holder by order of the referee. It was a case where the trustee in bankruptcy rejected the mortgaged property as being worthless to the bankrupt estate. That fact is shown by the following order therein:

* * * The trustee herein having made application for an order permitting him to reject as worthless and burdensome certain property and to refuse to take same into possession, and it appearing that said order should be granted and no one appearing in opposition thereto, it is ordered that the said trustee herein be and he is authorized and directed to reject the property described in the above application and to refuse to take the same into his possession.

In the instant case we have no rejection of the asset, but, on the contrary, as detailed in our findings of fact, the trustee in bankruptcy applied to the referee for an order to sell the cotton to petitioner at the price which petitioner had offered for it, the total consideration to be credited on petitioner's secured claim against the bankrupts. The referee granted the application to sell and ordered the trustee to transfer the title to the cotton to petitioner at the price and under the terms which it had offered. It was thus that the transaction was consummated, and the question involved here is entirely different from that which was involved in *Waters* v. *Ellington & Co.*, *supra*. Therefore, we think that case is distinguishable on its facts and is not controlling here.

*Issue 4.*—Petitioner makes a brief résumé of the facts regarding this issue in its brief, as follows:

During the taxable year in question petitioner collected and reported as gross income in its income tax return for said year the sum of $29,647.08 as recoveries oᴸ bad debts charged off and deducted in its income tax returns in the fiscal years 1931, 1934 and 1936. Exhibit A attached to the Stipulation of Facts shows that

petitioner's net loss for income tax purposes for the several years in question and the bad debts deducted on which recovery was made are in excess of the recovery in each instance. In addition to the above amount petitioner also collected and reported as gross income in its income tax return for the taxable year in question the sum of $14,106.06 as a recovery on a bad debt of Smith Bros. charged off and deducted in its income tax return for the fiscal year 1935. And said Exhibit shows that petitioner's net loss for income tax purposes for the year 1935 was $2,687.64. Petitioner claims that said recoveries aggregating $29,647.08 and the recovery on the Smith Bros. account to the extent of $2,687.64 were erroneously reported as gross income in its income tax return for the taxable year in question. Petitioner duly and timely filed its refund claim demanding refund of a part of the income tax assessed and paid on its original income tax return on account of reporting as gross income recoveries of $43,753.14 as bad debts charged off in prior years. Petitioner now concedes that, of the recoveries made in the taxable year in question and included as gross income for the taxable year in question, only $32,334.72 was erroneously reported.

The stipulated facts sustain the correctness of petitioner's foregoing statement. Therefore, premises considered, we think that under these facts petitioner is entitled to a "recovery exclusion" of $32,334.72, under section 116 of the Revenue Act of 1942,[2] as claimed, and we so hold.

*Decision will be entered under Rule 50.*

---

[2] SEC. 116. RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.

(a) EXCLUSION FROM INCOME.—Section 22 (b) (relating to exclusions from gross income) is amended by adding at the end thereof the following new paragraph:

"(12) RECOVERY OF BAD DEBTS, PRIOR TAXES, AND DELINQUENCY AMOUNTS.—Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph:

"(A) DEFINITION OF BAD DEBT.—The term 'bad debt' means a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year.

"(B) DEFINITION OF PRIOR TAX.—The term 'prior tax' means a tax on account of which a deduction or credit was allowed for a prior taxable year.

"(C) DEFINITION OF DELINQUENCY AMOUNT.—The term 'delinquency amount' means an amount paid or accrued on account of which a deduction or credit was allowed for a prior taxable year and which is attributable to failure to file return with respect to a tax, or pay a tax, within the time required by the law under which the tax is imposed, or to failure to file return with respect to a tax or pay a tax.

"(D) DEFINITION OF RECOVERY EXCLUSION.—The term 'recovery exclusion,' with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph."

  *      *      *      *      *      *      *

(b) EFFECTIVE DATE OF AMENDMENTS UNDER THE INTERNAL REVENUE CODE.—The amendments made by this section shall be applicable with respect to taxable years beginning after December 31, 1938.

(c) UNDER PRIOR REVENUE ACTS.—For the purposes of the Revenue Act of 1938 or any prior revenue Act, the amendments made to the Internal Revenue Code by subsection (a) of this section shall be effective as if they were a part of each such revenue Act on the date of its enactment.