# W. L. MOODY COTTON CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10925.

Circuit Court of Appeals, Fifth Circuit.

July 11, 1944.

---

H. E. Kleinecke, Jr., of Galveston, Tex., for petitioner.

Howard P. Locke, Sewall Key, A. F. Prescott, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Failing in the Tax Court to obtain a redetermination of deficiencies for the fiscal year ending August 31, 1937, satisfactory to it, petitioner is here seeking a reversal. The facts as stipulated and testified to are fully set out in the opinion of the Tax Court.[1] It will be sufficient to refer to that opinion for a statement of the facts as a whole and to present a brief abstract of them as they bear on each of the three questions presented.

The first is whether the petitioner, a corporation, on a cash receipts and disbursements basis, is entitled to a bad debts deduction of $77,088.20 charged off in the tax year on account of interest on secured notes and accounts not received as cash but accrued and returned as income in prior years. These are the pertinent facts: Petitioner, a cotton factor since its incorporation in 1916, has kept its books, and made and filed its Federal income tax returns, on a cash receipts and disbursements basis, except that for fiscal years prior to 1937, to-wit, 1927 to 1935, inclusive, it accrued and reported as gross income in its returns for those years, interest on certain collateralized accounts and notes receivable. In 1937 it charged off on its books of account and deducted in its income tax return the $77,088.28 interest previously accrued and reported.

The second question is whether petitioner is entitled to deduct, as a bad debt loss, $34,832.39, the difference between the amounts it had advanced on 3,996 bales of cotton,[2] and the amounts finally realized from the cotton when in 1937 petitioner sold the last 1,336 bales.

The third question is whether the sale in 1937 of the 1,336 bales of cotton for a price $21,913.52 greater than the price at which the bales had been taken from the trustee resulted in a taxable gain of that amount.

As these two questions are answered by determining whether or not petitioner bought the cotton from the trustee at an agreed price, the same statement of facts will suffice for them both. Between August, 1929, and November, 1931, a cotton partnership forwarded petitioner, and petitioner made advances against, 3,996 bales of cotton. On January 4, 1932, the partnership owed petitioner the sum of $244,393.46 evidenced by notes and accounts receivable and secured by the cotton. On that date an involuntary petition in bankruptcy was filed against the partnership, and it was adjudicated bankrupt as of that date. Petitioner filed its proof of claim in the amount of $303,936.59 as a claim secured by factor's lien on said 3,996 bales of cotton. After some negotia-

---

[1] 2 T.C. 347.

[2] When its debtor in 1932 went into bankruptcy the trustee transferred these bales to it at an agreed price to be credited on the debt.

tion, a price of seven cents per pound for the 3,996 bales was agreed on, and, pursuant to an order of the referee, directing him to do so, the trustee sold and transferred the cotton to petitioner at a price of $145,698.98 which was credited upon the claim. On July 23, 1932, the partnership was discharged in bankruptcy. In May, 1933, the last asset of the estate was sold, and the estate was wound up without paying anything on the claim, with the result that petitioner received no money or property from the bankrupt estate on account of its claim except the cotton above referred to. It, however, continued to carry the indebtedness on its books of account and as it sold the cotton it credited the proceeds of the sales on the account. In 1936 it sold 2,660 bales of the cotton for $138,935.63, and in the tax year it sold the remaining 1336 bales for $70,625.44, a price $21,913.52 more than the trustee was paid for the same bales. However, in its income tax return for 1937, instead of showing a gain of this amount, it ignored the fact that it had purchased the cotton in 1932, and that in 1933 the debt had become a total loss, and treating the debt as continuing, it credited the amount received on the debt, charged off the balance, $34,832.-39 as a bad debt loss, and deducted it in its income tax return.

■ We think that under the facts stipulated and found, the answer the Tax Court gave to each of these questions was the only proper answer. As to the first question, the deduction for loss of interest as a bad debt loss, Art. 23(k) 2 of Regulation 94 provides in part: "Worthless debts arising from unpaid wages, salaries, rents and similar items of taxable income will not be allowed as a deduction unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is sought to be made or for a previous year", and it is settled law that interest cannot be charged off as a bad debt unless it has first been charged on. Petitioner concedes that this is so, but, argues that since it did in earlier years accrue the interest and return it as income, this fully satisfied the regulation and the decisions. It insists that the view of the commissioner and the Tax Court, that since taxpayer was not on the accrual but on the cash basis, there was no improper accruing of interest, adds to the law a provision which it does not contain, in effect, that

for an interest item to be charged off as a bad debt, it must have been properly charged on. Agreement with petitioner's contention would be to throw out of the window petitioner's entire system of tax accounting, leaving to the varying caprices and whims of the taxpayer whether or not particular items should be deferred, advanced or returned. A taxpayer on the cash basis is on that basis uniformly as to both receipts and deductions, and he cannot be permitted any irregular and sporadic variation from that basis. The accruing and returning as income of the interest, therefore, in the earlier years before it was actually received was not, in accordance with petitioner's system of accounting, a charging of it on. Interest is charged on under the regulations and the decisions when the taxpayer is on a cash basis only when it is actually received. It is charged on when the taxpayer is on an accrual basis only when it is properly accrued. The conditions for a bad debt charge-off not being met here, the claim for it was properly disallowed.

■ It is equally obvious that the Tax Court made right answers to the second and third questions. Petitioner's argument to the contrary proceeds by ignoring what actually occurred with respect to the purchase of the cotton. It seeks an as if solution, that is, it urges a position based upon the wholly incorrect assumption that instead of buying the cotton from the trustee at an agreed price, the petitioner merely took the cotton as a credit on the indebtedness. The fact that petitioner continued to carry the indebtedness on its books was, of course, to be looked to in determining what was actually done. But the weight this might have had is completely overborne by the admitted facts of record: (1) that petitioner purchased the property from the trustee at an agreed figure; (2) credited the agreed amount on the debt, and was recognized as an unsecured creditor for the balance; and (3) that in 1933 occurred the identifiable event, the complete winding up of the bankruptcy estate without anything for the creditors, which fixed the bad debt loss for that year. Looking at the matter from the standpoint not of what might have, but of what actually, occurred, it is quite clear that the cotton was sold to petitioner in 1932, for the amount agreed on with a realized loss in 1933 of the balance of the debt by the closing out of the estate without paying

any dividends on the claim. Thus when the cotton was sold in 1936 and 1937, the proceeds did not represent the final recovery on, and a resulting loss of part of, the debt. They represented instead a profit on the cotton based on the price paid to the trustee. It is quite clear, therefore, that the Tax Court properly denied taxpayer's claim both that it was entitled to a bad debt deduction and that it had been improperly charged with a capital gain. The judgment was right. It is affirmed.