FRED E. BRIESACHER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Briesacher v. Commissioner
Docket No. 12812-79.
United States Tax Court
T.C. Memo 1982-618; 1982 Tax Ct. Memo LEXIS 132; 44 T.C.M. (CCH) 1490; T.C.M. (RIA) 82618; October 21, 1982. Fred E. Briesacher, Jr., pro se. David T. Karzon, Jr., for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of and an addition to petitioner's 1975 Federal income tax of $13,599.95 and $680.00, respectively. After concessions, the remaining issues are (1) the adjusted basis of petitioner's note which became worthless in 1975, (2) whether petitioner is entitled to various miscellaneous deductions, and (3) whether any part of petitioner's underpayment of tax was due to ngligence under section 6653(a). [1]
GENERAL FINDINGS OF FACT *134 Some of the facts are stipulated and found accordingly. Petitioner, Fred E. Briesacher, Jr., resided at Port Huememe, Calif., when he filed his petition herein. 1. Basis of Note
FINDINGS OF FACT Prior to 1973, petitioner owned and operated radio stations KFBD-AM and KFBD-FM located in Waynesville, Mo. Petitioner owned the building and land from which these radio stations were operated. In addition, petitioner operated a TV and appliance store from that same property. On September 1, 1973, petitioner sold all the assets of the radio stations to James P. DeAngio (DeAngio) for $250,000. DeAngio signed a purchase money security agreement and executed a note in the amount of $250,000 payable over 15 years and bearing 7-1/2 percent interest. DeAngio took over operation of the radio stations and paid rent to petitioner for his use of the land and building. During 1973, DeAngio made principal payments on the note to petitioner in the amount of $10,520. Petitioner received no other payments on the note. In September 1974, petitioner advised DeAngio that he was in default, and that the $250,000 note was due and the balance was payable in full. On May 22, 1975, petitioner *135 and two other creditors filed a petition alleging that DeAngio was bankrupt. Petitioner never regained ownership of the radio station assets. [2] On June 27, 1975, the radio station (except the tower), the retail appliance store, and the building were all destroyed by fire. In 1975 petitioner received insurance proceeds for both his ownership interest in the retail appliance store and for his security interest in the radio station assets. Those assets, their dates of acquisition, cost, and adjusted bases as of September 1, 1973, were as follows: Adjusted Basis as
Insurance
Item
Date Acquired
Cost
of Sept. 1, 1973
Proceeds
1. Radio Station
Assets
Transmitter
1964
$6,805.00
$747.82
$16,000
Transmitter
1968
16,061.00
4,366.18
16,000
Studio
Equipment
1964
1,000.00
66.36
2,400
Automation
Equipment
1969
12,390.00
3,106.00
20,000
Tower
285.35
Additional
Assets
[3] 5,000.00
Total
[4] $13,571.71
$54,400
2. TV and
Appliance Store
Assets Building
1960
$14,322.14
$ 4,884.59
$58,000
Furniture/Fixtures
1970
16,439.90
12,039.90
20,000
Inventory [5]
10,000
Total
$16,924.49
$88,000
*136 *137 On his 1973 Federal income tax return, petitioner disclosed the sale of the radio station. However, petitioner did not report gain based on an amount realized of $250,000. Nor did petitioner elect to report gain on the installment basis. Instead, petitioner included $10,520--the total amount of cash payments received on the note--in his 1973 gross income. [6] The statute of limitations bars assessing 1973 taxes. On his 1975 Federal income tax return, petitioner claimed a $247,600 loss calculated as follows: [7]
Building
$90,000
Radio Station
250,000
Stock and Tools
50,000
Total
$390,000
Less Insurance Proceeds
$142,400
Loss
$247,600
In his notice of deficiency, respondent disallowed the claimed loss of $247,600 since petitioner *138 failed to establish a basis in the assets destroyed by fire in excess of the insurance proceeds. Moreover, respondent determined petitioner recognized a gain measured by the insurance proceeds received less the sum of the adjusted basis of the radio assets. [8]
OPINION In 1973, petitioner sold *139 assets for a $250,000 note and retained a security interest in those assets. Petitioner never included any part of the debt owed him in his gross income. Respondent agrees that, after fire destroyed the assets and petitioner's debtor exhibited an inability to pay, the note became worthless in 1975. Both parties agree that the insurance proceeds petitioner received for his security interest in those assets affect any gain or loss recognized as a result of the aforementioned transactions and events. [9] Thus, the only issue is petitioner's basis in the note. Respondent claims that petitioner's basis in the note is the sum of the bases of the assets sold which gave rise to that note. Petitioner views the amount of his loss as the fair market value of those assets at the time of the fire less insurance proceeds *140 received. For the following reasons, we find for respondent. Generally a taxpayer's basis in a note is equal to the capital outlay plus any amount returned as income in a prior year with respect to that note. See sec. 166; secs. 1.166-1(e), 1.166-1(d)(2)(i), and 1.166-6, Income Tax Regs. See also W.L. Moody Cotton Co. v. Commissioner,2 T.C. 347 (1943), affd. 143 F.2d 712 (5th Cir. 1944). It is undisputed that petitioner did not include any part of the outstanding debt in his gross income.[10] Moreover, based on the instant record, we conclude that the note, for which payments ceased soon after its execution and which became worthless within two years, had no ascertainable fair market value at the time of the issuance. Thus, the transaction is kept "open" for tax purposes. See Burnet v. Logan,283 U.S. 404 (1931). [11] Thus, we hold petitioner's basis in the note is equal to the sum of the adjusted bases of the assets sold giving rise to that note. Consistent with our findings, such aggregate basis is $13,571.71. *141 2. Miscellaneous
FINDINGS OF FACT AND OPINION Petitioner claimed deductions in excess of amounts allowed by respondent for a variety of expenses incurred in 1975. Those expenses include: Item
Amount 1. Home Property Taxes
$50.59 2. Charitable Donations
68.50 3. Health and Accident Insurance
1,048.92 4. Dues to Shriners and Masons
96.00
Fraternal Organizations and
Pilots' Magazines 5. Purchase of Lake Lot
687.96 6. Purchase of Jeep
1,300.00 7. Replacement Cost of
3,516.47
Building 8. Boat Insurance
99.00 9. Aircraft Parts
163.85
10. Mobile Home Insurance
218.40
and Moving
11. Fishing Trip
60.00
12. Automobile Expense
500.00
13. Loan Repayments
1,200.00
For the following reasons, we sustain respondent's determination that none of these excess deductions are allowable. For convenience, findings of fact and opinion will be combined. Since petitioner has not established itemized deductions in excess of the standard deduction (which respondent would allow), no deductions are allowed in computing taxable income for home property taxes (Item 1), charitable donations (Item 2), health insurance (part of Item *142 3), and dues paid to the Shriners and Masons fraternal organizations (part of Item 4). See sec. 63. Petitioner claims a deduction of $3,516.47 for amounts spent to "reconstruct" the building destroyed by the 1975 fire (Item 7). We are given no information as to exactly how that money was spent or how far along such "reconstruction" had progressed. The cost of reconstructing a building is clearly a nondeductible capital expense. Moreover, petitioner makes no claim for depreciation and provides no information such as the building's useful life, salvage value, or when if at all, it was put into service. See Rule 142(a), Tax Court Rules of Practice and Procedure. Accordingly, we allow no deduction for any part of the $3,516.47 expended to replaced the building. In light of petitioner's vague and inconclusive testimony and his lack of records, we sustain respondent's determination with respect to the remaining deductions. Petitioner furnished no contract or other document to corroborate his contention that he was required to purchase the lake lot (Item 5) as a condition for his employment as a real estate salesman. Even if this cost were business-related, it is clearly a cost *143 of acquiring a nondepreciable asset. Sec. 263. Nor are we convinced that jeep (Item 6) was used by petitioner in his trade or business in 1975. The cost of the jeep is a nondeductible personal expense, sec. 262. Petitioner has failed to convince us that the boat for which insurance premiums were paid (Item 8), the two airplanes with respect to which repair parts and pilots' magazines were purchased (Items 4 and 9), or the expense of moving the mobile home (Item 10) were business related. In 1971, petitioner purchased the 20-foot boat for recreational purposes. We do not accept petitioner's testimony that he used the boat exclusively for entertaining prospective real estate clients in 1975. [12] In addition petitioner failed to show the use of his airplanes were ordinary and necessary expenses of either his TV and appliance store, or his real estate business. [13] Petitioner incurred expenses in moving a mobile home from Springfield, Mo., to Waynesville, Mo., and for insurance premiums paid with respect to that mobile home (Item 10). Two of petitioner's personal friends, who neither worked for or were employed by petitioner, lived in the mobile home rent free. Petitioner has *144 failed to establish the business use of his pleasure boat, his two airplanes, or his mobile home. Accordingly, we find all of the above expenses are personal nondeductible expenses. Sec. 262. The fishing trip (Item 11) is clearly a personal expense. In the absence of any proof, we also sustain respondent's determination that $500 of petitioner's claimed $2,578.23 deduction for automobile *145 expenses (Item 12) is a personal expense. Loan repayments (Item 13) are nondeductible returns of capital.Moreover, petitioner furnished no documentation to establish the amount, if any, of any such loan repayments which are allocable to interest. Thus, no interest deduction is allowed. [14]
3. Negligence
Petitioner obviously kept inadequate records. Moreover, he claimed business deductions for expenses clearly personal or capital in nature. We find that part of petitioner's underpayment of tax was due to negligence. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. On May 4, 1982, the Court denied petitioner's Motion to Dismiss.↩
2. On January 30, 1975, DeAngio sold his interest in the radio stations to Pulasko Media, Inc. On January 31, 1978, the Federal Communications Commission (FCC) adopted an order granting assignment of the FCC licenses to Pulasko Media, Inc.↩
3. We make our finding with respect to the adjusted basis of additional assets (desks, chairs, typewriters, adding and copy machines, and cabinets) on the basis of the entire record. Keeping in mind that petitioner produced no records verifying the cost of those assets or the dates of acquisition, and bearing heavily against petitioner whose "inexactitude" is of his own making, we hold petitioner had a $5,000 adjusted basis in additional assets sold in 1973. See Cohan v. Commissioner,39 F.2d 540, 544↩ (2d Cir. 1930). 4. Petitioner's contention that his adjusted bases in these assets was $105,315.93 because that was "the market value of equipment sold" is simply an erroneous interpretation of the law. Basis herein turns on a taxpayer's cost, not fair market value. Sec. 1012. Petitioner utterly failed to prove a basis in excess of $13,471.71 for the radio station assets sold. ↩
5. Petitioner has failed to establish the cost of any inventory on hand at the time of the fire. In any event, the record suggests the cost of any such inventory had been taken as a business expense during 1975. In addition, petitioner's claim for a loss for accounts receivable must be rejected. Petitioner has failed to show either the worthlessness of those accounts or that those accounts had previously been included in gross income.↩
6. Petitioner's 1973 reporting position resulted in an adjusted gross income of negative $262.86; thus, petitioner reported no tax liability for 1973.↩
7. Petitioner reported a business loss of $22,627.01 in addition to his $247,600 "casualty" loss in 1975. Petitioner's 1975 reporting position resulted in an adjusted gross income of negative $265,392.01; thus, petitioner reported no tax liability for 1975.↩
8. Consistent with our finding that petitioner had an aggregate adjusted basis of $13,571.71 in the radio station assets, respondent would compute a gain of $40,828.29 measured by the insurance proceeds received, $54,400.00, less the sum of the basis of the radio station assets, $13,571.71. Petitioner also received insurance proceeds of $88,000 with respect to the assets of the TV and appliance store. Although respondent determined petitioner realized gain on this transaction, he allows nonrecognition treatment under sec. 1033 with respect to such gain since petitioner replaced that property with like kind property. We have found as a fact that the sum of the adjusted bases of the TV and appliance store assets was less than the insurance proceeds received with respect to those assets ($88,000); thus, we disallow petitioner's claimed loss deduction in connection with those assets.↩
9. Respondent treats the disposition of the radio station assets in 1973 and the receipt of insurance proceeds in 1975 with respect to those assets as a single transaction for tax purposes. Thus, respondent, acknowledging the radio station assets consisted of sec. 1231 assets, allows capital gain treatment (subject to recapture) on receipt of the insurance proceeds.↩
10. Petitioner did include $10,520 (the payments made on the note in 1973) in his 1973 gross income with respect to the sale of the assets. However, the $10,520 does not represent inclusion in gross income of the note or part of the note. Instead, the $10,520 represents cash payments received by petitioner on the note. Receipt of payment on a note simply does not increase basis in that note. ↩
11. For similar results, see Hutton v. Commissioner,T.C. Memo. 1976-6; Heldt v. Commissioner,16 B.T.A. 1035↩ (1929).
12. See also sec. 1.274-5(c)(6)(iii), Income Tax Regs.↩, which requires a taxpayer to keep adequate records with respect to a facility used in connection with an entertainment activity or the use of such facility shall be presumed to be primarily personal. Petitioner herein kept no records.
13. See Briesacher v. Commissioner,T.C. Memo. 1979-43↩, wherein petitioner herein was allowed to deduct one-third of his airplane expenses in 1971 as business expenses. Despite an inadequate record, this Court made the 1971 finding before the radio station burned down. Petitioner herein cannot tie his airplane usage in 1975 to the radio station he sold in 1973 and we find unconvincing any business purpose claimed to be related to his real estate business.
14. This case is marked by an almost total lack of records. Petitioner, on a prior occasion, was before this Court with respect to the taxable year 1971. See Briesacher v. Commissioner,supra.↩On that occasion, petitioner's case likewise was marked by inadequate records. Bearing in mind that the burden of proof rests with the taxpayer, petitioner is by now well aware of the importance good record keeping plays in proving his case.