T.C. Memo. 1997-268

UNITED STATES TAX COURT

TERRY AND KATHRYN A. RODITSKI DILOZIR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3632-96.                    Filed June 12, 1997.

Terry Dilozir, pro se.

<u>Michael P. Breton</u>, for respondent.

MEMORANDUM OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]  Respondent determined a deficiency in

---

[1]  All section references are to the Internal Revenue Code
in effect for the year in issue, unless otherwise indicated.  All
Rule references are to the Tax Court Rules of Practice and
(continued...)

petitioners' 1993 Federal income tax in the amount of $3,538 and an accuracy-related penalty under section 6662(a) in the amount of $708. The issues for decision are: (1) Whether petitioners are entitled to deduct certain claimed Schedule C expenses; (2) whether petitioners underreported capital gain income on Schedule D by the amount of $22,116; and (3) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

For clarity and convenience, we have combined the findings of fact and discussion of pertinent legal issues. Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Avon, Connecticut, at the time the petition was filed.

We begin by noting that petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1. Schedule C Deductions

Petitioner Terry Dilozir (petitioner) was self-employed as a real estate agent during the year in issue. Petitioner worked in

---

[1](...continued)
Procedure.

the office of RE/MAX Realtors, located in Farmington,

Connecticut.  On Schedule C for the 1993 tax year, petitioner

reported income and expenses as follows:

|  | Amount | Total Amount |
|---|---|---|
| Income: |  |  |
| Gross receipts | $8,638.00 |  |
| Other income | 1,950.00 |  |
|  |  | $10,588.00 |
|  |  |  |
| Expenses: |  |  |
| Advertising | 2,287.65 |  |
| Bad debts | 1,000.00 |  |
| Depreciation | 1,760.00 |  |
| Employee benefit programs | 562.15 |  |
| Insurance | 850.00 |  |
| Office expense | 5,445.55 |  |
| Pension and profit-sharing plans | 525.00 |  |
| Rent or lease | 3,521.23 |  |
| Repairs and maintenance | 874.32 |  |
| Supplies | 743.56 |  |
| Taxes and licenses | 1,515.00 |  |
| Travel, meals, entertainment | 157.14 |  |
|  |  | 19,241.60 |
| Net loss |  | [1](8,653.60) |

[1]  Petitioners' return miscalculated expenses as totaling
$18,431.60, resulting in total losses claimed in the amount of
$7,753.60.

In the notice of deficiency, respondent disallowed the claimed

rent expense in the amount of $3,521.23, and the claimed bad debt

deduction in the amount of $1,000.

Section 162(a) provides that there shall be allowed as a

deduction all the ordinary and necessary expenses paid or

incurred during the taxable year in carrying on any trade or

business.  Section 6001 requires that a taxpayer liable for any

tax shall maintain such records, render such statements, make

such returns, and comply with such regulations as the Secretary may from time to time prescribe.

(a) <u>Claimed Rent Expense</u>

Section 162(a)(3) allows a taxpayer to deduct rental expenses incurred in connection with a trade or business. Petitioner argues that in exchange for his use of the RE/MAX office, he had agreed to pay to RE/MAX 35 percent of any commissions earned, resulting in a deductible rental expense in the amount of $3,271.90. To support this assertion, petitioner introduced into evidence a letter purportedly written by Rosemary Slade of the RE/MAX office where petitioner worked. With respect to petitioner's 1993 rent expense, the letter states:

> The payments in question are the payments that were taken out of commissions earned by and applied toward Fixed Expenses. I have enclosed a copy of your Independent Contractor Agreement that explains what Fixed Expenses are. * * * Our agreement with you, stated that 35% of each commission would be applied to that amount as is documented on your Ledger Card which I have also enclosed.

The letter then indicates that petitioner paid "fixed expenses" out of commissions earned in the amount of $3,271.90, as well as "personal expenses" in the amount of $4,382.48, for combined total expenses paid to RE/MAX in the amount of $7,654.38 for 1993. Petitioner explained at trial that the term "fixed expenses", as used in the letter, referred to rent expenses, while the term "personal expenses" referred to expenses for secretaries, fax machines, and photocopies, and served as the primary basis of petitioner's claim for office expenses.

Respondent argues that petitioner's claimed rent expense represents a duplication of his claimed office expense, previously allowed by respondent.

The amount of office expenses claimed by petitioner and allowed by respondent, $5,445.55, is greater than the "personal expenses" in the amount of $4,382.48 indicated in the letter. Moreover, respondent has allowed petitioner's claims for other expenses in addition to office expenses.  Consequently, we conclude that petitioner's claimed rent expense represents a duplication of expenses previously allowed by respondent.[2]

Petitioners have failed to establish that they are entitled to the claimed rental expense deduction in the amount of $3,271.90.  Rule 142(a).  We, therefore, sustain respondent's determination on this issue.

(b)  Claimed Bad Debt Deduction

On June 2, 1992, petitioner and an associate, Peter Kostochko, agreed to purchase a dwelling located at 107 Mill Street, Glastonbury, Connecticut, for $99,000.[3]  Petitioner paid

---

[2]  We are also troubled by a discrepancy between the figures indicated in the letter and other items in the record.  The amount indicated as "fixed expenses" in the letter, $3,271.90, is greater than 35 percent of $8,638, the amount of gross commissions indicated on the Form 1099.  Respondent objected to the admissibility of the letter on the basis of hearsay.  While we have admitted the letter, we have previously concluded that the claimed expenses are a duplication of other expenses claimed by petitioner and allowed by respondent.

[3]  The record does not indicate the precise nature of Mr.
(continued...)

a deposit to the seller's real estate agent, Frank Dibble, in the amount of $1,000. Petitioner's obligation under the agreement was contingent upon an inspection of the subject property and approval of financing. If petitioner could not obtain financing, the agreement required petitioner to notify the seller within a specified period of time.

After petitioner signed the purchase and sale agreement, the property in question was inspected, revealing that the dwelling had been damaged by termites. As a result, petitioner could not obtain financing. Nevertheless, petitioner wanted to buy the property, and he renegotiated a purchase price in the amount of $67,000, again contingent upon approval of financing. On three occasions, the seller agreed with petitioner to extend the deadline for obtaining financing, while petitioner sought to obtain a lender. Sometime in early 1993, petitioner had not obtained financing, and he failed to notify the seller within the notification period specified in their amended agreement. Petitioner was then informed that because the time for notifying the seller had lapsed, the $1,000 deposit could not be refunded.

Petitioner did not believe that he was entitled to a return of the deposit. Accordingly, petitioner did not institute legal action against either Mr. Dibble or the seller. Petitioner

---

[3](...continued)
Kostochko's relationship with petitioner with respect to this transaction.

claimed a bad debt deduction on Schedule C in the amount of $1,000 relating to the surrendered deposit.  Upon examination, respondent disallowed the claimed bad debt deduction, asserting that petitioners had not established that the forfeited deposit constituted a bad debt or was otherwise deductible.

As a general rule, section 166 allows a deduction for any bad debt that becomes worthless during the taxable year.  Sec. 166(a)(1).  To establish entitlement to a bad debt deduction, a taxpayer must prove that a bona fide debt existed, and that the debt became worthless in the year that the deduction is claimed. Rule 142(a); American Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991); sec. 1.166-1(c), Income Tax Regs.  A bona fide debt is defined as one which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money.  Sec. 1.166-1(c), Income Tax Regs.

Petitioner admitted at trial that his deposit was properly surrendered, and that he was not entitled to a return of the proceeds.  Therefore, the forfeited deposit did not give rise to a claim for a bad debt deduction under section 166.

Upon petitioner's admission at trial that he was not entitled to a return of the deposit, we asked petitioner to explain the basis of characterizing the forfeited deposit as a bad debt.  In response, petitioner stated:  "I expended [the deposit].  I -- I spent the money in trying to pursue a

profitable venture. I don't know if it's called a bad debt, but it's an expense." We interpret petitioner's statement as an assertion that the surrendered deposit somehow gave rise to a deduction under the general provisions of either section 162(a) or section 212. Section 212 generally permits a taxpayer to deduct ordinary and necessary expenses incurred either for the production of income or for the management, conservation, or maintenance of property held for the production of income. There is no indication in the record that petitioner sought to purchase the property in question as part of his trade or business or with the intent to produce income. Petitioners have failed to meet their burden of proving that they are entitled to the claimed deduction. Rule 142(a). We, therefore, sustain respondent on this issue.

## 2. Schedule D Gains and Losses

### (a) Demand Note

On November 8, 1989, petitioner agreed to lend $5,700 to the Connecticut Gold Chip Co. (CGCC). In return, petitioner received a demand note. The note provided that the principal was payable on or after December 31, 1989, upon the demand of the payee or holder. The note further provided that a late payment penalty was payable at the rate of 5 percent on any unpaid principal as of December 31, 1989, and upon default, interest would accrue at an annual rate of 18 percent on any unpaid balance. Petitioner did not receive any repayments of principal or interest on the

loan and learned in 1993 that CGCC had recently filed for bankruptcy. On Schedule D of their 1993 return, petitioners claimed a long-term capital loss in the amount of $11,400 relating to the demand note.

Upon examination, respondent allowed petitioners to claim $5,700 of the $11,400 as a capital loss, representing the principal amount of the promissory note, and disallowed the remaining claimed loss in the amount of $5,700. Respondent does not dispute petitioners' characterization of the loss as a long-term capital loss.

Although petitioners did not claim the loss as a bad debt, we believe the provisions of section 166 pertain to this transaction. Section 166(b) provides that the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. The "adjusted basis" of property is the property's unadjusted basis, adjusted as provided in section 1016. Sec. 1011(a). Typically, a taxpayer's basis in property is the cost of that property. Sec. 1012; sec. 1.1012-1(a), Income Tax Regs. In this instance, petitioners bear the burden of proving petitioner's basis in the demand note. Rule 142(a).

Petitioners indicated a cost basis in the demand note in the amount of $11,400. At trial, petitioner explained that he was entitled to increase his basis in the demand note for

"opportunity cost".  In this regard, petitioner argues that his basis in the note, for the purpose of determining loss from the transaction, should include not only the unpaid principal as allowed by respondent, but also the interest which CGCC should have paid to petitioner under the terms of the note.  Petitioners cite no case or statute to support this position.  We find that petitioners have failed to establish that petitioner's basis in the note was greater than $5,700, the amount determined by respondent.[4]  Rule 142(a).  We, therefore, sustain respondent on this issue.

(b)  Sale of the Simsbury Property

During the 1993 tax year, Mr. Kostochko, in the capacity of trustee, sold property located at 48 Country Road, Simsbury, Connecticut, for the amount of $69,700.  Petitioner and Mr. Kostochko maintain that they shared equal ownership in the property as partners.[5]  On Schedule D of their 1993 return, petitioners indicated that petitioner's share of the sale

---

[4]  We also note that a taxpayer cannot claim a deduction with respect to a worthless debt arising from unpaid wages, salaries, fees, rents, and similar items of income which have not been reported by the taxpayer as income.  Sec. 1.166-1(e), Income Tax Regs.  This principle applies to interest owed to a taxpayer but never reported as income.  W.L. Moody Cotton Co. v. Commissioner, 2 T.C. 347, 353-357 (1943), affd. 143 F.2d 712 (5th Cir. 1944).  Therefore, we could sustain respondent's determination on this basis as well.

[5]  There is no partnership tax return or partnership agreement in the record.  We assume that the parties were co-owners of the property in question.

proceeds was $32,567.38. Petitioners claimed a cost basis in the property in the amount of $16,414.42 and reported a net capital gain with respect to the sale in the amount of $16,152.96. Petitioners indicated on the return that petitioner had acquired his interest in the property on October 15, 1991.

Upon examination, respondent determined additional capital gain in the amount of $16,414.42. Respondent asserted that because petitioner offered no proof of his cost basis in the property, the entire amount of the sale proceeds constituted taxable gain.

The parties agree that the amount realized from the sale of the Simsbury property was $32,567.38. The record does not contain any purchase and sale agreement pertaining to petitioner's purchase of the property and does not contain the trust instrument which appointed Mr. Kostochko as trustee. Petitioners, however, offered into evidence an undated settlement statement pertaining to the sale of the property in 1993. Respondent objected to the settlement statement as inadmissible hearsay. Even if the Court were to consider this document, it would not support petitioners' position because it provides no information regarding petitioner's basis in the property. Petitioners have not presented any other evidence to establish petitioner's basis in the property. Petitioners have failed to meet their burden on this issue. Rule 142(a). We, therefore, sustain respondent's determination.

3. <u>Accuracy-Related Penalty Under Section 6662(a)</u>

Respondent determined that petitioners were liable for the accuracy-related penalty under section 6662(a) for 1993. The accuracy-related penalty is equal to 20 percent of any portion of an underpayment attributable to a taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c). Generally, the Commissioner's determination imposing the accuracy-related penalty is presumed correct, and taxpayers bear the burden of proving that they are not liable for the accuracy-related penalty imposed by section 6662(a). Rule 142(a); <u>Tweeddale v. Commissioner</u>, 92 T.C. 501, 505 (1989).

In this instance, petitioners have offered no evidence that they made a reasonable attempt to report the items of income and deductions in issue. Petitioners have failed to meet their burden of proving that they are not liable for the accuracy-related penalty. We, therefore, sustain respondent's determination on this issue.

To reflect the foregoing,

Decision will be entered
for respondent.