# Appeal of CHARLES A. COLLIN. Docket No. 309.

A taxpayer who keeps his accounts on a cash receipts and disbursements basis may not deduct from gross income, as for a bad debt, an item of accrued interest which he had not at any time previously treated as income or reported as taxable income.

Submitted December 22, 1924; decided January 13, 1925.

*Charles A. Collin*, *Esq.*, the taxpayer, *pro se.*

*W. F. Gibbs*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a proposed additional income tax of $1,868.61 for the calendar year 1920 arising from the disallowance of a deduction taken as a bad debt by the taxpayer. The facts are not in controversy.

FINDINGS OF FACT.

1. Prior to March 1, 1913, the taxpayer was the holder of an obligation to pay money in the principal sum of $21,600. On March 1, 1913, interest had accrued on this principal in the amount of $7,899.05. From that date to April 20, 1920, further interest had accrued in the amount of $9,134.95.

2. In making return of his income for Federal taxation, the taxpayer deducted from his gross income the sum of the three items just mentioned, to wit, $38,634, as a bad debt ascertained to be worthless and charged off in the taxable year 1920.

3. During the entire period under consideration the taxpayer's accounts were kept on a cash receipts and disbursements basis and no portion of the said $9,134.95, representing interest accrued after March 1, 1913, had been accrued by the taxpayer or in anywise treated as income in his accounts or reported by him as taxable income. This item of interest was ascertained by the taxpayer to be worthless during the calendar year 1920.

4. Upon audit, the Commissioner allowed the deduction claimed by the taxpayer to the extent of $29,499.05—that amount representing the principal indebtedness of $21,600 plus interest accrued prior to March 1, 1913, of $7,899.05—but refused to allow the deduction as for a bad debt of the further amount of $9,134.95 representing interest accrued after March 1, 1913.

5. The disallowance by the Commissioner of the said deduction of $9,134.95 resulted in his determination of a deficiency in tax for the year 1920 in the amount of $1,868.61, which is the amount here in controversy. On September 20, 1924, the Commissioner notified the taxpayer, by registered letter, of the deficiency in tax. On October 3, 1924, the taxpayer initiated this appeal by filing a petition with this Board.

DECISION.

The determination of the Commissioner is approved.

## OPINION.

KORNER: The issue involved in this appeal is simply stated. It is: May a taxpayer who keeps his accounts on a cash receipts and disbursements basis deduct from gross income, as for a bad debt, accrued interest which he had not at any time previously treated as taxable income?

The taxpayer insists that section 214(a)(7) of the Revenue Act of 1918 authorized such deduction. That section reads as follows:

SEC. 214(a). That in computing net income there shall be allowed as deductions: * * * (7) Debts ascertained to be worthless and charged off within the taxable year.

The contention of the taxpayer is that the above-quoted section places no limitations or conditions on the word *debts;* that a debt includes anything that is legally owing to the taxpayer; that the fact of its having been returned as income or not can make no difference because the statute says *debts* and to place any qualification thereon is to graft something on the statute which is not there. The gist of his argument is contained in his brief wherein he states that the construction put upon the statute by the Commissioner is inconsistent with the statute, and then continues:

* * * because it distinguishes and discriminates between different classes of debts; and in practical effect would prohibit the deduction of bad debts representing accrued but unpaid interest due and payable, while allowing the deduction of debts representing the principal on which the interest is computed. The statute makes no such discrimination between different classes of debts; but only requires the taxpayer to observe, in each year, the law applicable to his financial conditions for that year. The statute does not contemplate or require that the taxpayer should include accrued but unpaid interest due him in any year as income received by him in that year and thereby make a false return for that year. The statute does not compel a taxpayer to exceed the requirements of the statute applicable to his financial situation in one year as a condition of his receiving the benefits of the statutory provisions applicable to his financial situation in a subsequent year. When the taxpayer who has observed all the requirements of the statute in previous years reaches a year in which the statute allows him to make a deduction of bad debts then ascertained to be worthless and then charged off, he does not then need to make inquiry as to which class of debts may be deducted and which class of debts may not be deducted. The statute puts all debts, whether representing principal or interest, in one class; and what the statute has thus joined together the Treasury Department has no authority, right, or power to put asunder.

In support of his argument the taxpayer calls attention to the line of authorities holding that the clear import of the language employed in a statute can not be extended by implication or enlarged so as to embrace matters not specifically included. As illustrative of this point he quotes *in extenso* from *U. S. v. Merriam*, 263 U. S. 179 (at pp. 187–188), as follows:

On behalf of the Government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer.

Other cases are cited to the same effect.

The rule of construction thus invoked by the taxpayer is of long standing and is well recognized. But it should be borne in mind

that this rule has application to the imposition of the burden of taxation on the individual and does not have application in the construction of exemptions, saving clauses, and grants of benefit to the taxpayer. Equally eminent authority prescribes the rule of construction applicable to the latter class of cases. This latter rule is to the effect that where a taxpayer seeks the benefit of an exemption or grant under a statute he must show that he comes squarely within its provisions and the doubt, if any, is to be resolved in favor of the sovereign. Many cases could be cited in point, but it is perhaps most succinctly stated by Mr. Justice Brewer in *Swann* v. *U. S.*, 190 U. S. 143, 146, as follows:

> Where the burden is placed upon a citizen, if there be a doubt as to the extent of the burden, it is resolved in favor of a citizen, but where a privilege is granted, any doubt is resolved in favor of the Government.

The same principle was stated by Mr. Justice Brewer in *Cornell* v. *Coyne*, 192 U. S. 418, in the following words:

> But if there be any doubt as to the proper construction of this statute (and we think there is none), then that construction must be adopted which is most advantageous to the interests of the Government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor.

But we do not conceive that either of these well-known canons of construction need be invoked in the instant appeal. As was aptly said by Lord Cairns in *Partington* v. *Attorney General*, L. R. 4 H. L. 100, 122 (cited and quoted in taxpayer's brief):

> * * * In other words, if there be admissible in any statute, what is called an equitable construction, certainly such a construction is not admissible in a taxing statute, *where you can simply adhere to the words of the statute*. (Italics ours.)

As has been said above, the taxpayer insists that Congress has placed no limitation or modification on *the* word *debt* used in the statute and that when a debt becomes worthless it may be deducted irrespective of the manner in which it has been treated theretofore by the taxpayer. It is herein, in our opinion, the taxpayer is in error. The debts so allowed to be deducted in computing net income are subject to three important and significant modifications and limitations. Such debts (1) must be proven to have had an existence in fact, (2) must have been ascertained to have been worthless, and (3) must have been charged off within the taxable year. The first of these propositions was considered by this Board in the *Appeal of Luke & Fleming, Inc.*, 1 B. T. A. 12, but since there is no controversy here as to the fact that a debt did exist, it need not be further referred to. The same is true as to the second proposition, as it does not appear to be controverted that the debt here in question became worthless in 1920.

It is the last of these three qualifications with which we are concerned here. The statute prescribes that in order for a debt to be deducted from income as worthless it must be *charged off* within the taxable year. The query then resolves itself to the simple one of whether an item may be *charged off* which has never been *charged on*. A taxpayer is at liberty to keep his accounts in any way he chooses so long as his income is clearly and truly reflected thereby. If he chooses to account on an accrual basis, then it is his duty to account for all income accruing to him during the taxable year,

and he may deduct all expenses incurred within such year whether paid or not. If at a later time an item theretofore accrued as income proves to be worthless, it is his privilege under the statute here being considered to deduct such item from income. In such case there can be no room for question because that which was *charged off* had been *charged on*.

But is the situation any different in the case of a taxpayer who accounts on a cash receipts and disbursements basis? The statute makes no distinction between such a case and that of accrual accountancy. The rule requiring that the debt be charged off within the taxable year is equally applicable to both. The connotation is irresistible that in using the words "charged off" Congress referred to that which had been *charged on*. We do not believe that any other construction would be tenable, nor do we believe that in so reading the statute there has been grafted on the statute any provision beyond the clear import of the language used.

The mechanical process of keeping accounts is not prescribed by statute. Such accounts may be recorded in an elaborate set of books, or in mere memoranda, or be recorded only in the brain of the taxpayer. It can make no difference as to the form of such operation. There is a point of time within every system of accountancy when a taxpayer determines that an item *is income*. At that instant there is a *charge on* in his accounts whether this be a mental or mechanical operation. When such an item is thus charged on it becomes income to the taxpayer regardless of whether his accountancy be by that of the accrual system or by the cash receipts and disbursements system. Having become income every such item must under the law be returned for taxation. Until such item so becomes income in accordance with the taxpayer's method of accountancy, it is not income and need not be reported as such for taxation.

If the section of the statute under consideration here can be construed as we have above indicated, without doing violence to the clear and unambiguous intendment therein expressed, the application of the rule is not difficult. Let us apply it to the instant appeal. The taxpayer alleges in his petition and states in his brief that he "charged off" this item from his accounts within the taxable year. If this be true, it is entirely obvious that the item must have been previously *charged on* such account. If it had not so been charged on it could not have been charged off. It is axiomatic that something can not be subtracted from nothing. The only instance of such a process of which we are aware is found in the words "from him that hath not shall be taken away even that which he hath." (Matt. xxv, 29). And even in that instance there would appear to have been in contemplation a quantum or residuum from which to take away.

The taxpayer alleges, however, that he was on a cash receipts and disbursements basis. It is admitted that he at no time received the interest item in question. He alleges that he at no time reported such an item as income for taxation. So we are constrained to conclude, taking the most favorable view of the taxpayer's action, that the item in question was never charged on the taxpayer's accounts and never became income to him, and that when he states that the item was "charged off" within the taxable year he is not using that •

term in the sense in which it was employed by Congress in enacting Section 214(a)(7) of the Revenue Act of 1918. It may be quite true that the taxpayer in the year 1920 ascertained the debt to be worthless, but the statute does not provide that all debts so ascertained to be worthless may be deducted. There must be a *charge off* in addition. Under the circumstances we are of the opinion that, under taxpayer's system of accountancy as shown by himself, there could not have taken place such a charge off.

The taxpayer called our attention to *Plant* v. *Walsh*, 280 Fed. 722, in which the court said (at p. 724):

> The plaintiff contends that all the statute requires him to prove is that the debt was ascertained to be worthless and charged off within the year 1913. This he has done by the undisputed evidence. The effect of so construing the statute may be to permit the taxpayer to deduct five-sixths of a loss accruing prior to the commencement of the taxable period, so that the return will not reflect his entire income for that period. But Congress has the right to do this, and has done it if the statute is to be literally construed. In case of doubt a tax law should be construed in favor of the taxpayer.

Reference to the above case discloses a state of facts very similar to that in the instant appeal. But a reading of that case makes it apparent that the decision therein was predicated on the interest items in question having been accrued *as income*. This is evident from the language of the court, at page 723, as follows:

> I think that as to this question *United States* v. *Guinsburg, supra*, is conclusive. The basis of that decision was that money owing to the taxpayer *is income* accrued from the time when the liability to pay became absolute, though it is not yet due. (Italics ours.)

In that case it is apparent that the court was considering the interest accrued *as income* and was allowing the deduction therefrom as for a worthless debt. In the instant appeal the taxpayer has *not* treated the interest owing *as income*. If he had done so he would undoubtedly have reported it for taxation. *Plant* v. *Walsh, supra*, is clearly distinguishable and is not authority for the position contended for by the taxpayer in the instant appeal.

We are of opinion that the interest in question here was never income to the taxpayer under his system of accountancy and was never taken into his accounts as income or *charged on* his accounts in such manner as to support an alleged *charge-off* for the purpose of taking deduction therefor as a worthless debt. We are of opinion that in providing that debts ascertained to be worthless and charged off within the taxable year, Congress clearly expressed the intent that items so charged off should have had a prior standing on the taxpayer's accounts, as income, or as capital.

We are of opinion that the foregoing constitutes sufficient grounds for approval of the Commissioner's determination, but the earnest and able presentation of this appeal by the taxpayer invites an exposition of any further valid grounds for its denial. To our minds a cogent reason for such a denial is to be found in the discrimination between taxpayers of the same class which would result if the contention of the taxpayer should prevail.

The power rests in Congress to divide taxpayers into classes and impose a different burden of taxation on each class provided always that the proportionate burden is the same on each member in the class. Thus Congress may by allowing specific exemptions to mar-

ried men (increasing such exemptions for each dependent child) impose a greater tax burden on bachelors than on benedicts. Likewise by the graduated system of tax rates Congress may impose a ratably higher burden on the wealthy as distinguished from the person of moderate income. In the Revenue Act of 1924 individuals with " earned income " are favored as a class as against persons whose incomes do not fall within that classification. Such examples could be multiplied. But an entirely different situation is presented where it is proposed to lay a proportional different burden of tax on one individual than that laid on a similarly circumstanced individual within the same classification.

We have shown above that if a taxpayer accounts on an accrual basis he must report as income receivables accrued during the year whether payment is received thereon or not. On such income he pays taxes. Later if the receivable is ascertained to be worthless he may charge off the item as worthless and take deduction therefor in a subsequent return. But he is deducting, in such case, only that which he was required to treat as income and on which he was required to pay a tax. Now apply this situation to the instant case: The taxpayer and John Doe are exactly similarly circumstanced and each has an item of accrued but unpaid interest owing to him. John Doe accounts on an accrual system and under the law must, in his books of account, treat such accrual as income, return it for taxation as such, and *pay tax thereon.* The taxpayer accounts on the cash receipts and disbursements basis and does not treat such items as income, and *pays no tax* thereon. To permit a subsequent deduction from income of this item to each taxpayer alike would be to place a greater burden of taxation on John Doe. Did Congress intend this? This query was propounded to the taxpayer at the hearing and he answered that the plain words of the statute showed such intent. We doubt the authority of Congress so to legislate but we do not deem it necesary to this appeal to consider the question of Congress' authority in the premises. We are content to say that in construing the language of Congress to ascertain the intent thereof, that construction should be rejected which would find an intent of Congress to enact a measure of doubtful validity; and should be resolved in favor of an intent to impose the burden of taxation alike on all persons within the same class.

We do not hesitate to say that the mere accident, or design, of difference in the method of recording exactly similar transactions employed by two exactly similarly circumstanced taxpayers, should not have the effect of classifying them differently under the law, so as to impose a more onerous burden on the one than on the other. Indeed, we do not believe that Congress so intended.

The taxpayer in his supplemental brief called our attention to the language of the Circuit Court of Appeals, Third Circuit, in the case of *Ludington* v. *McCaughn,* 1 (2d) Fed. 689, 692, as follows:

While in the language of the statute in respect to a taxable gain derived from the sale of personal property there was manifestly a constitutional question, no such question can be found in its language in respect to a loss which the statute authorizes the taxpayer to deduct in ascertaining taxable income. No mention of losses is made in the sixteenth amendment, and there is no constitutional limitation upon the power of Congress in respect to the allowance of

losses. Congress may allow or disallow them at will and upon any basis. Taxable gain is a constitutional concept denoting income which the taxpayer has derived, while deductible loss is a creation of Congress, varying from time to time as Congress deals with it in different ways.

We fail to see wherein our opinion is in conflict with the above. As therein stated, Congress may allow losses or disallow them, and upon any basis. But having by statute allowed such loss is it to be deemed the intent of Congress that the man with blue eyes shall have advantage of it while denying it to the man with brown eyes, or to the man who records his transactions on a cash-receipts basis and not to the man who records his on the accrual basis? We do not think that such intent should be lightly attributed to Congress.

The Revenue Act of 1918, section 212, provides:

SEC. 212. (a) That in the case of an individual the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * *.

As early as the Revenue Act of 1916, sec. 8(g), Congress recognized the accrual system of accounting, and provided that a taxpayer *might* report his income as reflected thereby. The same provision remained in force after the passage of the Revenue Act of 1917. See sec. 1204. In the Revenue Act of 1918 (above quoted) it is made obligatory on the taxpayer to compute his net income in accordance with the method of accounting regularly employed by him. Must he then pay a greater tax for recording his transactions in such manner? To distinguish between him and his brother who accounts on the cash basis, in allowing deductions, would have that effect. All parts of a statute should be construed together in ascertaining the intent of the lawmakers. One section may throw much light on another which might otherwise seem obscure. Standing alone a section may appear to have a meaning which it was never intended it should have but when read in connection with another section the meaning and intent become apparent. Where sections may logically be construed to bring about consistency between them, that construction should be adopted rather than one which leads to inconsistent and illogical results.

We are of opinion that the determination of the deficiency by the Commissioner should be approved.