Estate of Leo G. Federman, Deceased, Charles E. Federman and Clarence Rausch, Executors and Trustees v. Commissioner.
Estate of Leo G. Federman, Deceased v. Commissioner
Docket No. 29683.
United States Tax Court
1952 Tax Ct. Memo LEXIS 156; 11 T.C.M. (CCH) 686; T.C.M. (RIA) 52206; June 27, 1952
*156 Robert Guinther, Esq., Second Nat'l Bldg., Akron, Ohio, for the petitioner. James F. Kennedy, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax and 50 per cent additions thereto for fraud as follows: Year
Deficiency
50% Addition
1933
$ 206.68
$103.34
1934
417.30
208.65
1935
506.59
253.30
1936
431.73
215.87
1937
439.38
395.70
1938
439.96
219.98
1939
529.95
264.98
1940
1,488.92
744.46
8/6/41
1,024.99 The issues are, first, whether the returns for the years 1933 through 1939 were false and fraudulent with intent to evade tax and whether any part of the deficiency for 1940 was due to fraud with intent to evade tax; second, whether $250 for 1940 and $125 for the short period in 1941 were erroneously included as dividend income when they represented savings and loan dividends belonging to others; third, whether $478.92 for 1940 and $485.54 for the short period in 1941 were erroneously included in the income of the decedent as interest on savings accounts which did not belong to him; fourth, whether the Commissioner erroneously included in *157 the decedent's income, for the short period in 1941, $35.40 representing interest on Government Bonds; fifth, whether a dividend of $150 for 1941 on stock of Louis Ostrov Shoe Company belonged to the decedent; sixth, whether the decedent received a dividend of $192.50 on preferred stock of Warner Brothers Pictures, Inc.; and, seventh, whether the decedent was entitled to deduct $26,976.52 as a bad debt for 1940. Findings of Fact The returns of the decedent for the taxable years were filed with the collector or internal revenue for the 18th District of Ohio. None of those returns were false or fraudulent with intent to evade tax and no part of any deficiency for any of the taxable years is due to fraud with intent to evade tax. The decedent, prior to his death on August 6, 1941, had been engaged for many years in a number of businesses, one of which was the lending of money. The Commissioner, in determining the deficiency for 1940, included in gross income as dividends $125 from First Federal Savings & Loan Association of Detroit, and $125 from Baltimore Federal Savings and Loan Association of Baltimore, and in determining the deficiency for 1941 included $62.50 as a dividend *158 from each of these associations. Those amounts belonged to, were received by, and were reported by Manufacturers' and Merchants' Discount Company and did not belong to the decedent. The decedent, on his return for 1940, reported $5,240.19 as "interest on bank deposits, notes, mortgages, etc." That item was not further explained on the return. The Commissioner, in determining the deficiency for that year, added $95.60 to represent interest on deposits in financial institutions not reported on the return. $1,052.90 was reported on the decedent's return for the period ended August 6, 1941 as interest on "bank deposits, notes, etc." That item was not further explained on the return. The Commissioner, in determining the deficiency for that year, added $739.60 to the income reported and explained that that amount, representing interest on deposits in financial institutions, had not been reported. $1,633.16 of the total amount of interest reported on the return for 1940 represented interest on savings accounts. The item of $95.60, by which the Commissioner increased the interest reported, represented interest on savings accounts which the banks credited on their books on January 1, 1940, but *159 which was not reported on the return on the ground that if the decedent had gone to the banks on December 31, 1939, he could have withdrawn that interest. $478.92 was reported on the return for 1940 to represent interest upon separate savings accounts in the Society for Savings, Cleveland, Ohio, in the names of Shirley Federman, Emmanuel Grossman, Rose Moskowitz, and Irene Moskowitz, and interest in a similar account in Immigrants Industrial Savings Bank of New York in the name of the decedent for Shirley Federman. No interest on those accounts was reported on the return for the period ended August 6, 1941. The decedent opened the four accounts in the Society for Savings and made all of the deposits in these accounts. He signed a signature card in each case when he opened the account and retained the right to withdraw all monies in each account. The bank had no other signature card in any of the accounts, it does not appear that any person other than the decedent had a right to withdraw any of the money in any account, and it does not appear that any person other than the decedent in whose name the account stood had any knowledge of the existence of the account, up to the date *160 of the death of the decedent. The record does not show the amount of interest credited to any of the accounts during the years 1940 or 1941. The record does not show who the persons were in whose names the accounts stood. No funds were withdrawn from those accounts until after the decedent's death and then the funds in those accounts were withdrawn by the persons in whose names the accounts stood, each having provided the bank with a signature card after the date of the death of the decedent. The record does not show anything in regard to the account in the Immigrants Industrial Savings Bank except that it was in the name of the decedent for Shirley Federman. No account is reported on the return for the period ending August 6, 1941 under Item 4 "Interest on government obligations, etc." The Commissioner, in determining the deficiency for that period, added $139.69 to the income reported on the return and explained that interest from government bonds in that amount had been omitted from the return. The decedent purchased some United State Series G bonds in July 1941. The record does not show anything further in regard to his ownership of government obligations during the taxable *161 period up to the date of his death. The decedent, prior to his death, made a loan to Albert Ostrov. Part of the security for the loan was shares of stock of Louis Ostrov Shoe Company, 50 of which were transferred into the name of the decedent for the purpose of securing the note. A dividend of $3.00 per share, or $150.00, was paid on those shares on June 30, 1941, and was credited on the loan in accordance with the agreement of the parties. The $150 did not represent a dividend belonging to the decedent. The Commissioner, in determining the deficiency for the period ended August 6, 1941, erroneously included in the income of the decedent $150 representing that dividend on the stock of Louis Ostrov Shoe Company. The Commissioner, in determining the deficiency for the period ended August 6, 1941, added to the reported income $192.50 described as a dividend on Warner Brothers Pictures, Inc. The decedent received no dividend of that kind during that period. The record fails to show that a debt due from a nephew of the decedent to the decedent became worthless in 1940 in the amount of $26,976.52 or in any other amount. No deduction for any such bad debt was claimed on the return or *162 allowed by the Commissioner in determining the deficiency for that year. All facts stipulated by the parties are included herein by this reference. Opinion MURDOCK, Judge: The parties have stipulated that the assessment of a deficiency for each of the years 1933 through 1939 is barred by the statute of limitations unless the Commissioner sustains his burden of proving that the return for that year was false or fraudulent with intent to evade tax. He relies as proof of fraud solely upon the fact that the decedent failed to report as income interest on a group of savings accounts. The record in regard to those accounts is vague. The Court does not know the circumstances under which the accounts were opened or what arrangement, if any, the decedent had with persons in whose names some of the accounts stood. The amounts of interest involved ranged from about $1,700 to about $2,400 annually. Those amounts are but a small part of the total income which the decedent reported from all sources. His failure to report the interest on these accounts apparently came to light early in 1941 when he gave the passbooks to the accountant who was making up his return for 1940. He apparently reported *163 his income on a cash basis, he had not actually withdrawn any of the interest credited to the accounts, and he told the accountant that he did not know he had to report the interest. The accountant advised him that he had to report the interest, the accountant had the interest credited in the passbooks, and he reported the income credited for 1940, except a small amount credited January 1, 1940 which the accountant apparently thought could have been reported for 1939. No effort was made to correct the returns filed for prior years. The Court does not regard the evidence as a whole as clear and convincing evidence that the returns for the years 1933 through 1939 were false and fraudulent with intent to evade tax. Consequently, nothing further need be decided in regard to those years. The Commissioner agrees that there is no evidence to show that any part of the deficiency for 1940 was due to fraud with intent to evade tax. The evidence shows that the savings and loan investments did not belong to the decedent and, therefore, the Commissioner erred when he added to the decedent's income for 1940 and 1941 dividends on those investments. The same is true in regard to the dividend of *164 $150 on the Louis Ostrov Shoe Company stock and on the stock of Warner Brothers Pictures, Inc. The evidence shows that the Commissioner must have acted on a misunderstanding of the facts. The evidence relating to the interest for 1940 and for the period in 1941 up to the date of the decedent's death on the five savings accounts is too vague and uncertain to justify a finding that the interest did not belong to the decedent. He reported most of it for 1940 while he was still alive after discussing the matter with his accountant. It is suggested that the five accounts were in the names of nieces and a nephew, but the evidence does not show who the people were in whose names the accounts stood, why the decedent opened the accounts in their names, or that he had any understanding with those people. It does not show that the persons in whose names the accounts stood knew during his life that such accounts existed. There is no evidence in regard to the account in New York except that it was in the decedent's name for Shirley Federman. The record does not show how much of the interest in controversy was credited to that account or how much to each of the other accounts. If the decedent *165 used their names for his own convenience, or if he merely intended that what remained in the accounts should go to them after his death, the income would be taxable to him as long as he lived since he alone controlled the accounts and had the unqualified right to withdraw the interest as well as the principal in each account. The parties get into an argument in regard to various technicalities with relation to this issue, but the evidence is not sufficiently definite to require the Court to get into any such discussion and, in any event, control over income, rather than refinements of title, determines who owes Federal income taxes. $62.43 of the $739.60 added by the Commissioner as "interest income" for 1941 was not explained in the record and the petitioner concedes that the balance of $254.06 was properly added. The Commissioner did not err as to either year in his treatment of interest on the savings accounts. The next issue is whether the Commissioner erroneously included $35.40 in the decedent's income for the period ended with his death, representing unreported interest on government bonds. The amount which he actually added to the reported income in this connection was $139.69. *166 The only evidence on this point is the testimony of a witness as follows: "Well, that $139 includes an item of $175 interest on G bonds in '41, and those G bonds were purchased by L. G. Federman shortly before his death, namely, July, 1941, so that he could not have received any check for any interest on the G bonds at all in 1941." The Court is unable to determine from that statement that the Commissioner made any error in adding the $139.69 to income. Obviously, $139.69 can not include an item of $175. $175 exceeds the amount included by $35.31, but whether this difference has any relation to the amount alleged in the petition of $35.40 is not clear. The evidence goes further than to confuse the Court and does not justify any change in the Commissioner's determination. The final issue is whether the decedent was entitled to deduct for 1940 $26,976.52 as a debt which became worthless in that year. The decedent did not claim any deduction for a bad debt on his return for 1940 although he had deducted for other bad debts in prior years. This particular bad debt was the basis for a claim for refund filed by the petitioner shortly before the notice of deficiency was issued. The *167 Commissioner has taken no action on the claim but is content to have the issue decided in this proceeding. The petitioner has the burden of proving that a loan was made, the circumstances under which it was made, and all other facts necessary to show that it is entitled to the deduction claimed. The claim of the petitioner is that the decedent loaned about $87,000 to his nephew late in 1929 to save him from losing some securities; the loan had been reduced to $41,222.75 by January 12, 1932, on which day the nephew gave five promissory notes to the decedent, each was for $8,244.55 at 4 per cent and one was payable at the end of each of the subsequent five years; $2,000 was paid on the first note in 1933; no further payments were made until 1940 when the nephew paid $15,000 in settlement of the remaining debt of $39,222.75; the decedent received $12,246.23 after paying an attorney fee and expenses; and the unpaid balance of $26,976.52 was a debt which became worthless in 1940 as indicated by the identifiable event, the settlement. However, the facts to support that contention have not been proven by competent evidence and the Commissioner introduced evidence tending to show that the *168 nephew was capable of paying in full any debt owed by him. The petitioner is not to be excused from producing proof that the debt became worthless to some extent in 1940 merely because the creditor was not available as a witness. The debtor and the attorney who apparently handled the settlement for the decedent were living and available but were not called. No one with any first-hand information of any part of the transaction was called. Instead, the petitioner relies entirely upon papers found among the effects of the decedent by one of his executors. None of the papers was further identified. Counsel for the Commissioner objected to their admission in evidence on the ground that they were not the best evidence and that he had no opportunity to cross-examine the person who had prepared them. They would be competent evidence if the question were whether the decedent "ascertained" the debt to be worthless to the extent of $26,976.52 in 1940, but the parties agree that that question is immaterial under the retroactive amendments of the Revenue Act of 1942 which allow a deduction for 1940 only when a debt actually becomes worthless in that year. The papers, not being the best evidence *169 and having been objected to for that reason, are not competent evidence to prove any of the facts stated in them. Thus, the petitioner has failed to sustain the burden of proof and must lose on this issue. No evidence was offered to show how the alleged debt originated, the amount of it, or how it was reduced to $41,222.75 by January 12, 1932. Photostatic copies of five notes dated January 12, 1932 were offered as papers found among the effects of the decedent but were not otherwise identified. There is no evidence to show how much, if any, of the total amount of the debt on January 12, 1932 represented capitalization of unpaid accrued interest. There is no evidence that interest had been paid in full to that date or that none of the $41,222.75 represented capitalized unpaid interest. It is fair to assume that the decedent had not reported as income any capitalized interest, and interest not reported can not be deducted as a bad debt. Charles A. Collin, 1 B.T.A. 305. Thus, no starting point is properly established. The Commissioner points out that collection of the balance of $6,244.55 of the alleged note due January 12, 1933 and all of the one due January 12, 1934 was *170 apparently barred by the statute of limitations prior to the settlement and those debts could not be regarded on this incomplete record as becoming worthless by reason of the settlement. Copies of letters from the decedent to his attorneys are not the best evidence that such letters were even mailed, but the contents of the copies offered would show, at most, only that the decedent was trying to collect a debt from his nephew. Copies of "Summons and Complaint" would not prove the petitioner's case if competent evidence that such documents were served on the debtor. It is not claimed that originals were ever filed in any court proceeding. Letters said to be from the attorney for the decedent were not identified except as papers found among the effects of the decedent. One, purporting to set forth the result of the settlement, is not proof of its contents. The writer could have been called to testify and to permit cross-examination by counsel for the Commissioner. There is reason behind the rules of evidence and the Commissioner is not bound by the contents of papers to which he objects and which are not competent evidence of the crux of the petitioner's case even though they were admissible *171 for other purposes, were offered only as papers found among the effects of the decedent, and were admitted, over the Commissioner's objection, for what they were worth. The Commissioner had no opportunity to cross-examine anyone who knew anything about these transactions. He introduced, without objection, evidence that the debtor was receiving substantial income from 1938 through 1940 and thereafter. The record leaves a real doubt as to the whole transaction and particularly as to whether the decedent might have collected much more from his nephew but decided not to press him for the balance due. The Court has concluded from the entire record that the petitioner has not substantiated its claim to the deduction. Decision will be entered under Rule 50.