ARTHUR J. CROSSLAND, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent ARTHUR J. and SUSAN CROSSLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crossland v. Commissioner
Docket Nos. 2431-72; 7613-73
United States Tax Court
T.C. Memo 1974-277; 1974 Tax Ct. Memo LEXIS 42; 33 T.C.M. (CCH) 1278; T.C.M. (RIA) 740277; October 24, 1974, Filed. Arthur J. Crossland, pro se. Peter J. Panuthos, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Arthur J. Crossland Year
Deficiency 1968
$1,796.09
1970 673.81
Arthur J. and Susan Crossland
Year
Deficiency
1971
$ 689.16
Concessions having been made by both parties, only two issues for decision remain: 1. Whether petitioner is entitled to a deduction under section 162(a) (2) [1] for the cost of travel, food and lodging in the amount of $5,630.55 as ordinary and necessary expenses incurred "while away from home *43 in the pursuit of a trade or business" while he was in Vermont during 1968. 2. Whether petitioner is entitled to deduct for 1970 the loss of anticipated income that petitioner alleges he would have received had not the Internal Revenue Service pressured him into resigning from his job. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and resided in Suncook, New Hampshire, at the time petitions herein were filed. Petitioner-husband's individual tax returns for 1968 and 1970 were filed with the Internal Revenue Service Center in Andover, Massachusetts, as was the petitioners' joint return for 1971. Since petitioner-wife is a party solely due to having filed a joint return with her husband, the term "petitioner" herein will refer to the husband. Petitioner is a leased contract technical writer by profession, specializing in the field of electronics. As a leased contract writer, petitioner's professional life consists in short-term writing projects. Petitioner refers to himself and others who *44 make a career out of numerous short-term jobs located in various parts of the country as "job shoppers." His time is generally sold through his agent, Northern Industrial Services, Inc. of Albany, New York, in three-month to six-month blocks. Since 1953 he has worked in various places throughout the United States for periods ranging from three months to four years. The average duration of jobs held by petitioner between 1957 and 1972 inclusive was 4.66 months. In 1955 petitioner purchased a home in Windsor, Pennsylvania, where he lived with his former wife and children. At that time he intended to remain indefinitely in Windsor, continuing to contract his time as a job shopper only until he was able to pay off his bills. Thereafter he planned to stay in Windsor and find some kind of job and do free lance writing. During 1964 and 1965 petitioner was an assistant supervisor for the Apollo-Saturn Data Management Program at the Kennedy Space Center in Florida, working with both R.C.A. and Ling-Temco-Vought. At some time during this period petitioner acquired a Florida driver's license and registered his car in Florida. After leaving the Kennedy Space Center, petitioner decided *45 to go job shopping again. Accordingly, petitioner got a job with General Electric ("G.E.") in Oklahoma City beginning in January 1966. After only two months G.E. moved its entire project, including all equipment and personnel, to Syracuse, New York. Allegedly, on July 9, 1966, petitioner purchased an interest in his mother's home in Shamokin, Pennsylvania, for $2,000. This sum was payable $200 down, and $40 per month, without interest, until the $1,800 balance was reduced to zero. However, both mother and son were quite casual regarding the monthly payments. Petitioner sent money only to the extent possible. Moreover, whatever money was sent was not earmarked as payments on the home; it was to help petitioner's mother. Petitioner never established his regular abode at his mother's home in Shamokin. In late 1967 or early 1968 petitioner separated from his former wife. Although he was still making payments on the house and furniture in Windsor, at that time petitioner ceased to consider Windsor as his abode. On October 2, 1968, petitioner and his former wife were divorced. As part of the divorce settlement, petitioner's former wife retained the Windsor home and remained there *46 with the children. Petitioner married his present wife in 1969. She is a native of Vermont.
On November 13, 1967 petitioner commenced working in Essex Junction, Vermont as a technical writer for International Business Machines ("I.B.M."). This job ended seven months later in May 17, 1968, at which time petitioner went to Shamokin, Pennsylvania for a few days. Petitioner's primary purpose in making trips to Shamokin was to break his consecutive residency in Vermont. Secondary purposes were to visit his mother and to get a Pennsylvania driver's license. Petitioner has never worked as a writer in Shamokin. On May 23, 1968 he began working for G.E. in Burlington, Vermont and continued to do so until March 14, 1969. Three days later, on March 17, 1969, petitioner returned to I.B.M. in Essex Junction, where he worked continuously until August 21, 1969. On August 25, 1969, four days later, petitioner returned to G.E. in Burlington and continued there until May 8, 1970. The distance between Burlington and Essex Junction is approximately 15 miles. Both I.B.M. and G.E. made a practice of paying a per diem allowance to those employees who were "temporary," i.e., away from their *47 residence. To be eligible for this allowance, an employee had to certify, in writing, that his residence was elsewhere. Petitioner made such certification. I.B.M. was content to rely upon the certificate of residence that petitioner's agent, Northern Industrial Services, had required of him. G.E., on the other hand, required notarized certificates of residence every 30 or 90 days from petitioner directly. Moreover, G.E. had a company policy of not paying the per diem allowance beyond one year. On one occasion, G.E., acting upon the insistence of the U.S. Army - which evidently was ultimately bearing the cost of the salaries of petitioner and others similarly employed - attempted to recover from petitioner and others the funds paid to them as per diem expenses. Although some "job shoppers" were found not to have bona fide residences elsewhere and were required to refund the per diem allowances, petitioner was able to satisfy the auditors that he was away from his residence and was allowed to retain his per diem allowance. Petitioner's jobs with G.E. and I.B.M. during 1968 were temporary jobs. While working for I.B.M. in 1968 petitioner resided at Baker's Motel in Essex Junction *48 in a $50 per week room which he shared with another job shopper. After returning from Shamokin to begin work for G.E. on May 23, 1968, petitioner moved into an apartment in Burlington. Approximately three months later, in August 1968, petitioner purchased a travel trailer in which he lived until the end of 1971. When petitioner remarried in 1969 both he and his new wife lived in the trailer. On his Federal income tax return for 1968 petitioner claimed a $5,630.55 deduction for the cost of travel, meals and lodging while in Essex Junction and Burlington, Vermont, contending that at all relevant times after he separated from his first wife his home for tax purposes was in Shamokin, Pennsylvania. Respondent has disallowed this deduction. Concessions by the parties have removed this issue from consideration for the taxable years 1970 and 1971. For the taxable year 1970 petitioner deducted $3,213.75 as "net income loss during four months unemployment resulting from I.R.S. pressure to resign temporary assignment." At trial petitioner explained that when the Revenue Service audited his 1968 return and disallowed his claimed travel expenses and determined that funds received from *49 his Vermont employers as per diem living expenses were taxable as ordinary income, he decided to voluntarily leave his job. This, he felt, would tend to show that his job was temporary. However, this desire to improve his legal position was not the sole motivation for his resignation. Petitioner also wanted to leave Vermont and become a free lance writer. Apart from the statement on his return, petitioner gave no support for this loss deduction, nor did he show how he computed the loss. Respondent disallowed this deduction in its entirety. OPINION 1. Petitioner's Tax Home. Petitioner spent $5,630.55 in 1968 for food and lodging in Vermont. He deducted this as ordinary and necessary expenses incurred while away from home in pursuit of his trade or business. Respondent asserts that petitioner was not "away from home" when he incurred these expenses, and we agree. Section 162(a) (2) allows taxpayers to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under *50 the circumstances) while away from home in the pursuit of a trade or business." The Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946), in construing the immediate precursor of section 162(a) (2), [2] stated: Three conditions must * * * be satisfied before a traveling expense deduction may be made * * *. (1) The expense must be a reasonable and necessary traveling expense * * *. (2) The expense must be incurred "while away from home." (3) The expense must be incurred in pursuit of business * * *. Whether particular expenditures fulfill these three conditions so as to entitle a taxpayer to a deduction is purely a question of fact in most instances. Flowers at 470. We have repeatedly and consistently held as a general proposition that "home," for purposes of section 162(a) (2), means the taxpayer's principal place of employment. E.g., Truman C. Tucker, 55 T.C. 783 (1971); Emil J. Michaels, 53 T.C. 269 (1969); Rendell Owens, 50 T.C. 577 (1968); Ronald D. Kroll, 49 T.C. 557 (1968); Floyd Garlock, 34 T.C. 611 (1960). *51 Since petitioner's G.E. and I.B.M. jobs were each his principal and only places of employment during 1968, for tax purposes petitioner was at home while in Vermont unless we determine that his employment at G.E. and I.B.M. was temporary and he maintained a permanent abode in Pennsylvania. Living expenses incurred at a temporary post away from a taxpayer's permanent abode may be deductible. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Edward F. Blatnick, 56 T.C. 1344 (1971); Kermit L. Claunch, 29 T.C. 1047 (1958), affirmed 264 F.2d 309 (C.A. 5, 1959). While we have found as a fact that petitioner's jobs during 1968 were temporary, in that they were the sort of jobs which, it could be foreseen, would last only for a short period, we have also found as a fact that petitioner did not maintain a residence other than that at the job site. He did not incur duplicate living expenses by maintaining two places of abode for himself.[3] "The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional *52 and duplicate living expenses." Ronald D. Kroll, supra, at 562. Petitioner in 1968 was an itinerant worker whose home for tax purposes was wherever he happened to be working. United States v. Mathews, 332 F.2d 91 (C.A. 9, 1964); Kenneth H. Hicks, 47 T.C. 71 (1966). He had no regular place of business nor a regular place of abode in a real or substantial sense. See Rev. Rul. 73-529, 1973-49 I.R.B. 9. Therefore, he was not "away from home", and the expenses incurred for meals and lodging at the temporary job sites during 1968 are not deductible as traveling expenses under section 162(a) (2). 2. Loss of Income Deduction. At trial, petitioner all but acknowledged that this claim was frivolous, as indeed it is. The Internal Revenue Code does not now and has never provided for the deductibility as a loss of amounts that could have been earned had the taxpayer been employed. Palmer Hutcheson, 17 T.C. 14 (1951); Charles A. Collin, 1 B.T.A. 305 (1925). Decision *53 will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect in the years in issue. ↩
2. Int. Rev. Code of 1939, § 23(a) (1) (A), as amended. ↩
3. Of course he did incur expenses for maintaining a home for his former wife and his children, but their home was not his home during 1968. ↩