121 T.C. No. 15

UNITED STATES TAX COURT

FEDERAL HOME LOAN MORTGAGE CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3941-99, 15626-99.     Filed October 30, 2003.

P was originally exempt from Federal income taxation. However, on Jan. 1, 1985, P became subject to taxation under the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 177, 98 Stat. 709. P adopted the accrual method of accounting for its first taxable year commencing Jan. 1, 1985. Before that date, P acquired certain mortgages that were in default. Interest accrued on each of those mortgages from the date of acquisition up to Jan. 1, 1985. At various points after Jan. 1, 1985, P foreclosed the mortgages on the underlying real estate. In computing its gain or loss from the foreclosures, P increased its regular adjusted cost basis in the mortgages for unpaid interest that had accrued before Jan. 1, 1985. R argues that P is not entitled to increase its regular adjusted cost basis on account of interest which accrued before Jan. 1, 1985.

<u>Held</u>: Sec. 166(a), I.R.C., provides a deduction for bad debts. Sec. 1.166-6(a)(2), Income Tax Regs., provides: "Accrued interest may be included as part of

the deduction allowable under this paragraph, but only if it has previously been returned as income."  P's accrued interest, which was accrued when P was tax exempt and not required to file income tax returns, was not "returned as income" within the meaning of sec. 1.166-6(a)(2), Income Tax Regs., and P is not entitled to increase its regular adjusted cost basis for these amounts.

Robert A. Rudnick, Stephen J. Marzen, James F. Warren, and Neil H. Koslowe, for petitioner.

Gary D. Kallevang, for respondent.

OPINION

RUWE, Judge:  Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 3941-99 for 1985 and 1986, as follows:

| Year | Deficiency |
| --- | --- |
| 1985 | $36,623,695 |
| 1986 | 40,111,127 |

Petitioner claims overpayments of $9,604,085 for 1985 and $12,418,469 for 1986.

Respondent determined deficiencies in petitioner's Federal income taxes in docket No. 15626-99 for 1987, 1988, 1989, and 1990, as follows:

| Year | Deficiency |
|------|-----------|
| 1987 | $26,200,358 |
| 1988 | 13,827,654 |
| 1989 | 6,225,404 |
| 1990 | 23,466,338 |

Petitioner claims overpayments of $57,775,538 for 1987, $28,434,990 for 1988, $32,577,346 for 1989, and $19,504,333 for 1990.

Petitioner and respondent filed cross-motions for partial summary judgment under Rule 121[1] on the issue of whether, for purposes of claiming a bad debt deduction under section 166, petitioner is entitled to increase its regular adjusted cost basis in certain mortgages acquired before January 1, 1985, for unpaid interest which accrued during the period that petitioner was tax exempt.

## Background

The facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner's principal office was located in McLean, Virginia. At all relevant times, petitioner was a corporation managed by a board of directors.

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the taxable years in issue.

Petitioner was chartered by Congress on July 24, 1970, by the Emergency Home Financing Act of 1970, Pub. L. 91-351, title III (Federal Home Loan Mortgage Corporation Act), 84 Stat. 450. Petitioner was originally exempt from Federal income taxation. However, Congress repealed petitioner's Federal income tax exemption status in the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 177, 98 Stat. 709. Pursuant to this act, petitioner became subject to Federal income taxation, effective January 1, 1985.

Petitioner held mortgages in its retained mortgage portfolio or as collateral for issuances of collateralized mortgage obligations (CMOs). In other cases, petitioner, as guarantor of participation certificates (PCs)[2] it issued, would reacquire mortgages placed in a PC pool that became delinquent.[3] Petitioner routinely acquired real estate by foreclosure when mortgages that it owned became delinquent. In some cases, mortgages that petitioner held, and had never sold, became delinquent.

In a number of cases, the ownership of mortgages, which were in default, was transferred to petitioner before January 1, 1985.

---

[2]PCs are securities representing beneficial ownership of the principal and interest payments on a pool of mortgages.

[3]Regardless of the manner in which petitioner acquired the delinquent mortgages, all real estate that petitioner acquired through foreclosure of delinquent mortgages is known as "real estate owned".

At various points in the taxable years 1985 and 1986, petitioner foreclosed on these mortgages and obtained freehold title to the underlying real estate.  Petitioner was required to demonstrate its gain or loss on the foreclosures.

For the taxable years 1985 through 1990, petitioner consistently accrued into income stated interest on all single-family mortgages that it owned, whether or not that interest was received.  If such a mortgage was or became delinquent, petitioner nonetheless continued to accrue the interest through the date of foreclosure.  Petitioner accrued into income interest from the date of acquisition through the date of foreclosure in respect of all mortgages acquired before January 1, 1985, that were subject to foreclosure after that date.[4]

As part of the legislation in which petitioner became subject to Federal income taxation, Congress enacted transition rules for determining petitioner's adjusted basis in assets that it held on January 1, 1985.  Those rules are contained in DEFRA section 177(d), 98 Stat. 711, which provides:

(2) Adjusted basis of assets.--

   (A) In general.--Except as otherwise provided in
subparagraph (B), the adjusted basis of any asset of
the Federal Home Loan Mortgage Corporation held on
January 1, 1985, shall--

---

[4]Petitioner's treatment of interest accrued after Jan. 1, 1985, is not in dispute.

(i) for purposes of determining any loss, be equal to the lesser of the adjusted basis of such asset or the fair market value of such asset as of such date, and

(ii) for purposes of determining any gain, be equal to the higher of the adjusted basis of such asset or the fair market value of such asset as of such date.

*    *    *    *    *    *    *

(5) Adjusted basis.--For purposes of this subsection, the adjusted basis of any asset shall be determined under part II of subchapter O of the Internal Revenue Code of 1954.

In computing the gain or loss from its foreclosure sales, petitioner determined its adjusted basis pursuant to DEFRA section 177(d)(2) for mortgages acquired before, and held on, January 1, 1985. In determining its adjusted basis under these transition rules, petitioner included in its regular adjusted cost basis the amounts of unpaid interest which it had accrued from the date of acquisition of each mortgage to the date of foreclosure on the underlying real estate. These amounts of accrued interest included certain interest which had accrued before January 1, 1985.

Petitioner used its regular adjusted cost basis in determining the amount of any gain realized, or loss incurred, on the foreclosure of real estate securing mortgages that petitioner owned on January 1, 1985. During the taxable year 1985, petitioner foreclosed on 2,735 mortgages which it had held on January 1, 1985, and petitioner included in its adjusted cost

basis $3,050,459 of unpaid interest accrued as of December 31, 1984.  During the taxable year 1986, petitioner foreclosed on 747 mortgages held on January 1, 1985, and it included in its adjusted cost basis $675,988 of unpaid interest accrued as of December 31, 1984.

## Discussion

The parties filed cross-motions for partial summary judgment on the question of whether, for purposes of claiming a bad debt deduction under section 166, petitioner is entitled to increase its regular adjusted cost basis in certain mortgages acquired before January 1, 1985, for unpaid interest which accrued before January 1, 1985, when it was tax exempt.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001).  Either party may move for summary judgment upon all or any part of the legal issues in controversy.  Rule 121(a); FPL Group, Inc. v. Commissioner, supra at 74.  A decision will be rendered on a motion for partial summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.  Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  The moving party has the burden of

proving that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Rauenhorst v. Commissioner, 119 T.C. 157, 162 (2002).

Section 166(a) allows a deduction for bad debts.[5] The basis for determining the amount of the deduction for any bad debt is the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Sec. 166(b).[6] Section 1.166-6, Income Tax Regs., provides specific rules for bad debts which are attributable to mortgaged or pledged property. Section 1.166-6, Income Tax Regs., provides:

> (a) Deficiency deductible as bad debts--(1) Principal amount. If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the portion of the indebtedness remaining unsatisfied

---

[5]Sec. 166(a) provides:

SEC. 166(a). General Rule.--

> (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

> (2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

[6]Sec. 166(b) then provides:

> SEC. 166(b). Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

after the sale is wholly or partially uncollectible, the mortgagee or pledgee may deduct such amount under section 166(a) (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it becomes wholly worthless or is charged off as partially worthless.  See § 1.166-3.

(2) Accrued interest.  Accrued interest may be included as part of the deduction allowable under this paragraph, but only if it has previously been returned as income.

(b) Realization of gain or loss--(1) Determination of amount.  If, in the case of a sale described in paragraph (a) of this section, the creditor buys in the mortgaged or pledged property, loss or gain is also realized, measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by the creditor) and the fair market value of the property.

(2) Fair market value defined.  The fair market value of the property for this purpose shall, in the absence of clear and convincing proof to the contrary, be presumed to be the amount for which it is bid in by the taxpayer.

Petitioner argues that it is entitled to increase its regular adjusted cost basis in its mortgages to account for unpaid interest which accrued during the period in which it was tax exempt.  Respondent argues that section 1.166-6(a)(2), Income Tax Regs., requires as a condition precedent to such a basis increase that petitioner "returned as income", i.e., reported as taxable income, its accrued interest.  Since petitioner was tax exempt when the interest at issue accrued, respondent contends that petitioner has not met the requirements for deductibility

under section 1.166-6(a)(2), Income Tax Regs.  We agree with respondent.

Section 1.166-6(a)(2), Income Tax Regs., allows a bad debt deduction on account of accrued interest only if that accrued interest has previously been "returned as income."  We construe this language to require the accrued, but unpaid, interest to have previously been reported by the taxpayer as taxable income on a Federal income tax return.  This is, in our view, consistent with the purpose of providing a bad debt deduction which is to account for:  (1) The taxpayer's unrecovered cost or capital investment, and (2) amounts reported as income but ultimately not collected because they became worthless.  Citizens' Acceptance Corp. v. United States, 462 F.2d 751, 756 (3d Cir. 1972).[7]  We

_____

[7]See also Dist. Bond Co. v. Commissioner, 39 B.T.A. 739, 746 (1939), affd. in part on this issue, revd. in part on different grounds 113 F.2d 347 (9th Cir. 1940), a case involving a claimed bad debt deduction for accrued tax-exempt interest, wherein the Board of Tax Appeals observed:

> Petitioner insists that the deduction should be allowed in the instant case, notwithstanding the rule above referred to, for the reason that the amount in controversy was accrued by petitioner on its books and, it is argued, thus passed through the "tax mill."  We can not agree with this argument.  So far as concerns tax liability, a taxpayer on an accrual basis who accrues an income item on his books but does not include the amount in taxable income is in no different position than the taxpayer on a cash basis who does not include a similar item in income because it has not been received.  To allow the deduction in either of such events would result in reducing the amount of the taxable income received or accrued from other sources by an amount representing not a loss of capital or of

cannot construe the language in the regulation to include interest which the taxpayer has "accrued" for financial purposes but has not taken into account for tax purposes.

In cases interpreting the statutory requirements for allowance of a bad debt deduction for accrued, but unpaid, interest, the Board of Tax Appeals construed the provision of a deduction for "Debts ascertained to be worthless and charged off within the taxable year", which appeared in prior versions of section 166, to include a requirement that the item be previously "charged on". See, e.g., Collin v. Commissioner, 1 B.T.A. 305 (1925).[8] The Board of Tax Appeals determined that for interest to be "charged on" for purposes of a bad debt deduction, it must have been accrued as income, it must have been returned as income for taxation, and a tax must have been paid thereon. See, e.g., id. at 310. Thus, interest which had accrued, but which remained unpaid, could not be the subject of a bad debt deduction, since the taxpayer was on the cash receipts and disbursements method of accounting. See id. Further, an accrual basis taxpayer that had accrued tax-exempt bond interest on its books, but did not report

---

actual income, but merely a loss of anticipated earnings. * * *

See also Beekman v. Commissioner, 17 B.T.A. 643, 648 (1929).

[8]The statute under construction in Collin v. Commissioner, 1 B.T.A. 305 (1925), was sec. 214(a)(7) of the Revenue Act of 1918, ch. 18, 40 Stat. 1067.

such interest for tax purposes, could not claim a bad debt deduction for the accrued interest.  See <u>Dist. Bond Co. v. Commissioner</u>, 39 B.T.A. 739, 746 (1939), affd. in part on this issue, revd. in part on different grounds 113 F.2d 347 (9th Cir. 1940).  We believe these same principles apply for purposes of applying section 1.166-6(a)(2), Income Tax Regs.  Indeed, section 1.166-6(a)(2), Income Tax Regs., appears to have incorporated the principles articulated in this prior caselaw.  Accordingly, we hold that the language "returned as income", as used in section 1.166-6(a)(2), Income Tax Regs., refers to interest that has been properly accrued for tax purposes and has been reported as taxable income on a return.

It follows from our interpretation of section 1.166-6(a)(2), Income Tax Regs., and the precedents cited above, that petitioner cannot claim a bad debt deduction for interest, which accrued during a period in which petitioner was tax exempt, which it did not report as taxable income, and on which it was not subject to tax.[9]

Petitioner argues that the regulation is inapplicable to its situation because it adopted the accrual method of accounting for

---

[9]Petitioner does not allege that it filed a "return" in which it reported its accrued interest as taxable income for the periods before Jan. 1, 1985.  The argument that petitioner makes is that consistency in accounting requires it to increase its regular adjusted cost basis in its mortgages for the interest that accrued on those mortgages before Jan. 1, 1985.

its first taxable year commencing January 1, 1985, and that thereafter it consistently accounted for its accrued interest from the date of the acquisition of the mortgages until the foreclosures on the underlying real estate. Petitioner argues:

> It is long established law that when an entity becomes taxable for the first time, its adjusted cost basis in its assets, as of the date on which it becomes subject to federal income tax must be determined by reference to events that occurred during the pre-taxable period, using consistently the tax accounting method adopted by the taxpayer. * * *

We might agree that petitioner's argument is correct in certain specific circumstances;[10] however, we cannot agree that petitioner's supposition merits recognition as a rule of general application. In the instant cases, we are dealing with a regulatory provision which requires that accrued, but unpaid, interest be returned as income as a condition precedent to the inclusion of that interest amount in the taxpayer's regular adjusted cost basis. Petitioner has not returned its accrued interest as income for taxable years before January 1, 1985; it does not meet the requirement stated in section 1.166-6(a)(2),

---

[10]See, e.g., sec. 1016(a)(3) (providing an adjustment for previously tax-exempt individuals or organizations for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained for any period in which such individuals or organizations were not subject to taxation); Fed. Home Loan Mortgage Corp. v. Commissioner, 121 T.C. 128 (Sept. 4, 2003). Sec. 1.166-6(a)(2), Income Tax Regs., provides no comparable adjustment to regular adjusted cost basis for interest which accrued during a period in which a taxpayer was tax exempt.

Income Tax Regs.; and any general theory of consistent accountancy does not assist petitioner.

Petitioner's position disregards the fact that it was tax exempt for periods before January 1, 1985, and any interest which might have been accrued on its books and records did not accrue as taxable income. Petitioner was not required to file an income tax return for years before 1985. See secs. 6011(a), 6012(a), 6072(b). Thus, petitioner's interest accruals for the periods before January 1, 1985, could not have been "returned as income". Petitioner cites no authority which supports its contention that previously tax-exempt taxpayers which become taxable must, as a general rule, adjust their regular adjusted cost basis upward to account for items of interest that would have been accrued as taxable income if those taxpayers had previously been taxable. Nothing in section 166, the regulations interpreting that section, or, more specifically, the transition rules of DEFRA section 177(d) supports petitioner's position.

Petitioner relies upon Rev. Rul. 55-437, 1955-2 C.B. 548, and argues that under this ruling, adjustments to basis must be made as if the taxpayer, in fact, had been subject to tax and that these adjustments must be made according to the accounting method that the taxpayer adopts in its first taxable year. We do not read Rev. Rul. 55-437, supra, this broadly.

In Rev. Rul. 55-437, supra, a building and loan association became subject to Federal income taxation on January 1, 1952, having been previously tax exempt.  For its first taxable year, beginning after December 31, 1951, the association adopted the accrual method of accounting.  As of January 1, 1952, the association had outstanding balances of installment accounts receivable of 500x dollars of which 200x dollars represented unrealized profit with respect to such contracts.  Rev. Rul. 55-437, 1955-2 C.B. at 549-551, states:

> the only election of accounting method binding upon the association is that made in the return filed by it for its first taxable year beginning after December 31, 1951.  * * *
>
> Accordingly, if the association selects the accrual method of accounting in the return for its first taxable year beginning after December 31, 1951, the 200x dollars of unrealized profit received in such and subsequent taxable years under the installment contracts which were entered into in taxable years beginning prior to January 1, 1952, would not constitute taxable income insofar as the right to receive such installment payments accrued during a taxable year in which the association was exempt from Federal income taxation.  However, if the taxpayer selects the cash or installment method of accounting in such return, the payments received, to the extent of the previously unrealized profits included therein, would constitute taxable income in the year received.

Rev. Rul. 55-437, supra, does not support petitioner's position with respect to its pre-1985 interest accruals.  Rev. Rul. 55-437, supra, deals with the timing of income recognition.  The revenue ruling has nothing to do with the determination of basis for purposes of a foreclosure-related bad debt deduction

and clearly does not purport to replace the long standing rules concerning bad debt deductions.[11]

Petitioner also relies on certain statements that the Court of Appeals for the Fifth Circuit made in W.L. Moody Cotton Co. v. Commissioner, 143 F.2d 712, 714 (5th Cir. 1944), affg. 2 T.C. 347 (1943). In W.L. Moody Cotton Co., the taxpayer kept its books and filed its Federal income tax returns on a cash receipt and disbursements basis. However, from 1927 through 1935, it accrued and reported as gross income in its returns for those years interest on certain collateralized accounts and notes receivable. In 1937, it charged off on its books of account and deducted in its income tax return the interest that it previously accrued and reported. This Court upheld the Commissioner's disallowance of the taxpayer's deduction for its accrued, but unpaid, interest. The Court of Appeals for the Fifth Circuit affirmed, stating:

---

[11]Petitioner also relies upon Rev. Rul. 55-434, 1955-2 C.B. 538, which it claims "further confirms the importance of consistent application of Code § 166 to transactions straddling an entity's change in tax status." Rev. Rul. 55-434, supra, did not involve how to determine gain or loss upon foreclosure of a mortgage. Rather it involved how to determine basis in real property previously acquired in a foreclosure that occurred when the taxpayer was tax exempt. The revenue ruling applied sec. 39.23(k)-3, Regs. 118, which provided that the unadjusted basis of property acquired upon foreclosure is the fair market value of the property at the date of the acquisition of the property. See sec. 1.166-6(c), Income Tax Regs., which provides a similar rule. The facts and legal question involved in that revenue ruling are distinguishable, and petitioner's reliance on that revenue ruling is misplaced.

> A taxpayer on the cash basis is on that basis uniformly as to both receipts and deductions, and he cannot be permitted any irregular and sporadic variation from that basis.  The accruing and returning as income of the interest, therefore, in the earlier years before it was actually received was not, in accordance with petitioner's system of accounting, a charging of it on. Interest is charged on under the regulations and the decisions when the taxpayer is on a cash basis only when it is actually received.  It is charged on when the taxpayer is on an accrual basis only when it is properly accrued.  The conditions for a bad debt charge-off not being met here, the claim for it was properly disallowed.  [Id. at 714.]

Petitioner relies on these statements and contends that "the court's decision in W.L. Moody Cotton Co. explicitly holds that a taxpayer's method of tax accounting must be consistently applied for basis purposes."  We might agree with petitioner's contention that W.L. Moody Cotton Co. requires consistency in accounting for items of income and deduction.  However, we cannot agree that W.L. Moody Cotton Co. supports increasing petitioner's regular adjusted cost basis for interest accrued when petitioner was tax exempt.  Nothing in W.L. Moody Cotton Co. supports that position. Indeed, the statements petitioner relies on were made in the context of a broader discussion by the Court of Appeals of the requirement that interest be properly "charged on" before it be allowed as a bad debt deduction:

> As to the first question, the deduction for loss of interest as a bad debt loss, Art. 23(k)2 of Regulation 94 provides in part:  "Worthless debts arising from unpaid wages, salaries, rents and similar items of taxable income will not be allowed as a deduction unless the income such items represent has been included in the return of income for the year for which

the deduction as a bad debt is sought to be made or for a previous year," and it is settled law that interest cannot be charged off as a bad debt unless it has first been charged on. Petitioner concedes that this is so, but, argues that since it did in earlier years accrue the interest and return it as income, this fully satisfied the regulation and the decisions. It insists that the view of the commissioner and the Tax Court, that since taxpayer was not on the accrual but on the cash basis, there was no improper accruing of interest, adds to the law a provision which it does not contain, in effect, that for an interest item to be charged off as a bad debt, it must have been properly charged on. Agreement with petitioner's contention would be to throw out of the window petitioner's entire system of tax accounting, leaving to the varying caprices and whims of the taxpayer whether or not particular items should be deferred, advanced or returned. * * * [Id.]

We cannot agree that W.L. Moody Cotton Co. supports petitioner's position, and, indeed, it is contrary to that position to the extent it holds that interest must first be properly included in a return for tax purposes before it can be deductible as a bad debt.

Accounting methods are determinative of when an item of income or deduction must be recognized but are not determinative of whether the item meets the substantive requirements for being an item of income or deduction. Petitioner properly accounted for its interest income using the accrual method of accounting. Under this method of accounting, unpaid interest which accrued before January 1, 1985, was properly assigned to that period. However, since petitioner was tax exempt during this period, it realized no tax consequences from its accrued interest. Petitioner's accrued interest was not taxable income, it was not

"returned as income", and petitioner was not subject to tax on account of the accrued interest.  It follows that under section 1.166-6(a)(2), Income Tax Regs., petitioner may not increase its regular adjusted cost basis on account of interest which accrued when it was tax exempt.

An appropriate order will be issued.