ROBERT DELL AND NANCY L. DELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dell v. Commissioner
Docket No. 3783-93
United States Tax Court
T.C. Memo 1995-315; 1995 Tax Ct. Memo LEXIS 317; 70 T.C.M. (CCH) 69; July 18, 1995, Filed *317 Decision will be entered under Rule 155. P is the sole shareholder of D & D, an S corporation that operated both a wholesale petroleum business and retail gasoline filling stations. For internal accounting purposes it designated its retail operations as "D & D 2", and on its books treated transfers of inventory to its filling stations as "sales" to "D & D 2", accompanied by corresponding "accounts receivable" in favor of D & D. When this practice was discontinued, there remained on D & D's books a balance in the "accounts receivable" account attributable to such "sales". D & D claimed bad debt deductions in respect of the net amount remaining in its "account receivables" account. Held, a taxpayer may not owe money to himself; there was no actual debt generated by the "sales"; and D & D was therefore not entitled to a bad debt deduction (sec. 166(a)(1)) in respect of the "accounts receivable". Held, further, although D & D was on the accrual basis and had included the "sales" in income in the years the "sales" were made, D & D is not entitled to the bad debt deduction under sec. 1.166-1(c), Income Tax Regs. That regulation is concerned only with bona fide actual debts. *318 Even if income was overreported in prior years, D & D is not entitled to a compensatory bad debt deduction. For petitioners: Roy Michael Roush. For respondent: Russell D. Pinkerton. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined the following deficiencies in and additions to tax for petitioners' 1988 and 1989 taxable years: I.R.C. Sections
Year
Deficiency
6653(a)
6661 6662(c)
1988
$ 39,520
$ 1,976
$ 9,880
-   1989
30,762
-  -  $ 6,152
Following concessions by the parties, the sole remaining issue is the validity of a bad debt deduction taken under section 166 [1] by petitioners' wholly owned S corporation. Petitioners Robert and Nancy L. Dell resided in Rochester, Indiana, when the petition in this case was filed. [2] In June 1959, Robert Dell formed D & D Oil *319 Company (D & D). During the years at issue he was the sole owner of D & D, an S corporation. D & D used the accrual method of accounting. It operated both a wholesale petroleum business and 13 retail gasoline stations. D & D internally characterized its retail operations as "D & D 2" "D & D 2" was created for accounting purposes and to keep track of internal transactions. "D & D 2" was not a separate corporation or legal subsidiary of D & D. The wholesale portion of D & D supplied gasoline and related items to the retail portion ("D & D 2"). D & D made wholesale "sales" of gasoline to its stations operated as "D & D 2" throughout the period prior to and including the calendar year 1986. D & D treated transfers of gasoline and other items to "D & D 2" as sales on its books, which showed entries to sales and accounts receivable for each transaction. *320 The "sales" were treated as if made to third parties, i.e., invoices were issued, the "sales" amount was included in the wholesale division's part of reportable income, and the invoiced amounts were listed on the company's financial statements as accounts receivable. During 1986 and 1987, most of the retail outlets were leased to independent third parties. The lessees paid for the inventory remaining at these outlets. In 1988, there were only 4 stations remaining that were operated by D & D. When D & D terminated the practice of invoicing the retail outlets, the accounts receivable balance from "D & D 2" to D & D was $ 420,901.94. After certain adjustments, the accounts receivable balance on October 20, 1986, was reduced to $ 338,797.58. In respect of that remaining balance, D & D took bad debt deductions of $ 22,947.58, $ 40,000, and $ 275,850 on its Form 1120S for the years ended December 31, 1986, 1987, and 1988, respectively. The Commissioner disallowed the $ 275,850 bad debt deduction taken by D & D on its 1988 Form 1120S for the amount purportedly owed by "D & D 2" to D & D. The resulting increase in D & D's income passed through to petitioner, its sole shareholder. The year *321 1989 is at issue because the increase in petitioner's income in 1988 eliminated a net operating loss that had been carried forward to 1989. Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year." While it may sound simplistic, petitioner's argument necessitates that we state the obvious: In order to have a bad debt, it must first be established that there is a debt. The burden is upon petitioner to prove every element necessary for the deduction. In particular petitioner must prove there was a debt, and he has failed to do so. The core of petitioner's argument, which is that D & D owed money to itself, flies in the face of sound reason. Petitioner presented no authority whatsoever for this proposition. "D & D 2" was not a separate corporation. It was not a distinct legal entity. "D & D 2" was created for accounting purposes and to keep track of internal transactions. At all times, "D & D 2" was, at most, a division of D & D. Petitioner's position is grounded primarily upon section 1.166-1(c), Income Tax Regs., which provides: (c) Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide *322 debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A debt arising out of the receivables of an accrual method taxpayer is deemed to be an enforceable obligation for purposes of the preceding sentence to the extent that the income such debt represents have [sic] been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year. * * *
Petitioner relies upon the third sentence. He states that since D & D was on the accrual basis and since the "accounts receivable" representing the invoices for "sales" to "D & D 2" were included in taxable income, the regulation requires that the debt be deemed to be an enforceable obligation for purposes of the bad debt deduction. The point is fallacious. The regulation is concerned only with a bona fide debt, as shown by the example set forth in the sentence of the regulation immediately following the portion quoted above. That sentence reads: For example, a debt arising out of gambling receivables that are unenforceable under state or local law, which an accrual method *323 taxpayer includes in income under section 61, is an enforceable obligation for purposes of this paragraph. * * * [Sec. 1.166-1(c), Income Tax Regs.]
Thus, it is plain that if there is a real debt that is unenforceable, it may nevertheless qualify for a bad debt deduction in the circumstances set forth in the regulation. But there is nothing in the regulation to suggest that the same result would follow if there were no debt at all, as is the situation here. Similarly, there were no corresponding accounts receivable. D & D had no more "receivables" than it had "debt". In the same sense that there cannot be an indebtedness to oneself, there cannot be an accounts receivable from oneself. The "accounts receivable" in this case and the "debt" represented merely opposite sides of the same coin. The regulation is concerned only with genuine debts and genuine accounts receivable. It is wholly inapplicable here. If D & D overstated its income in any prior year, [3] it was open to petitioner to seek a refund of any overpayment of tax stemming from such overstatement. "[I]f a taxpayer ascertains that an item was improperly included in gross income in a prior taxable year, he should, if *324 within the period of limitation, file claim for credit or refund of any overpayment of tax arising therefrom." Section 1.451-1(a), Income Tax Regs. Any overstatement of income in a prior year does not entitle D & D to an erroneous, compensating deduction for the year claimed. [4]
*325 The only case dealt with by either party involving transactions between a corporation and an unincorporated branch or division is Sidney Ross Co. v. Commissioner, 26 B.T.A. 499 (1932). There the taxpayer corporation established a branch office in Shanghai, China, in 1921. It made advances to this branch office which were used in the branch office's operations. In 1923 the operation of the branch office was abandoned. The corporation claimed a deduction on various grounds for the "loss sustained". One such ground was that of a bad debt. The Board summarily refused to allow the deduction on any ground. In respect of the claimed bad debt, it stated merely: "It is stipulated the advances were made by petitioner to its own branch * * * and were written off by petitioner in 1923 when the business of its branch was closed out. This fact contradicts conclusively the existence of a legally enforceable debt." Sidney Ross Co. v. Commissioner, supra at 501. This case furnishes solid support for the Government. Since Sidney Ross Co. was decided prior to the adoption of section 1.166-1(c), Income Tax Regs., petitioner contends *326 that it is distinguishable. However, it is in point as to the existence of an actual debt, and, accordingly, as we have concluded above, the regulation does not support petitioner's position. There was no "debt" owed by "D & D 2" to D & D. Therefore, D & D is not entitled to a bad debt deduction. Decision will be entered under Rule 155 . Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Nancy L. Dell appears to be a petitioner solely as a result of having filed a joint return with Robert Dell. References to petitioner in the singular are to Robert Dell.↩
3. Other than to the extent of the bad debt deduction at issue here, we express no opinion as to whether D & D misstated its income in any prior year.↩
4. Similarly, where a loss is claimed in a later year to compensate for the erroneous inclusion in income in an earlier year, the deduction has been disallowed. See H. A. Carey Co. v. Commissioner, 29 T.C. 42, 47 (1957), where it was stated: "Such a process would not properly reflect the petitioner's income at the time, and the attempt to compensate for that error now by a procedure equally unsound, even though compensatory, may not be permitted to succeed." (quoting J. E. Mergott Co. v. Commissioner, 11 T.C . 47, 50-51 (1948); affd. 176 F.2d 860 (3d Cir. 1949)); see also W.L. Moody Cotton Co. v. Commissioner), 2 T.C. 347, 353-357 (1943), affd. 143 F.2d 712↩ (5th Cir. 1944) (cash basis taxpayer not entitled to bad debt deduction for unpaid interest erroneously taken into income in earlier year).